UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>        Plaintiff,<br><br>v.<br><br>DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as executors of the ESTATE OF JEFFREY E. EPSTEIN, GHISLAINE MAXWELL, an individual,<br><br>        Defendants. | Case No. 1:20-cv-00484<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jane Doe ("Doe" or "Plaintiff") alleges as follows:

### INTRODUCTION

1. This case arises out of years of sexual abuse and exploitation of a young girl by notorious pedophile and convicted sex offender Jeffrey Epstein ("Epstein"). It all started in 1994 when 13-year-old Jane Doe met Epstein and Defendant Ghislaine Maxwell ("Maxwell") at a summer camp in Michigan. Jane Doe was their first known victim and was subsequently abused by Epstein and Maxwell for years as a young girl, suffering unimaginable physical and psychological trauma and distress. Despite that, Jane Doe has persevered and survived to tell her story, to hold her perpetrators accountable and to seek justice for the atrocities committed against her.

2. Throughout his life, Epstein systematically perpetrated acts of molestation, exploitation, assault and rape on hundreds of young girls. Epstein's system of abuse was facilitated in large part by his co-conspirator and accomplice, Maxwell, who helped supply him with a steady stream of young and vulnerable girls—many of whom were fatherless, like Jane Doe, and came from struggling families.

3. This system, which took years to develop, all started with them exploiting and abusing Jane Doe who they used as a guinea pig to refine their criminal enterprise and widen their network of additional sexual abuse victims.

## THE PARTIES

4. Plaintiff Jane Doe is a citizen of the State of California. At all times relevant to this suit, Doe was a minor child living in Florida and New York and who was sexually abused while she was a minor by Defendants in New York.

5. Defendant Ghislaine Maxwell is domiciled in the State of New York.

6. Defendant Darren K. Indyke is sued in his capacity as an appointed executor of the Estate of Jeffrey E. Epstein.

7. Defendant Richard D. Kahn is sued in his capacity as an appointed executor of the Estate of Jeffrey E. Epstein.

## JURISDICTION AND VENUE

8. Plaintiff is domiciled in California.

9. Jeffrey Epstein was a citizen of the United States domiciled in the U.S. Virgin Islands at the time of his death. As the legal representatives of the Estate of Jeffrey E. Epstein, Darren K. Indyke and Richard D. Kahn are deemed citizens of the U.S. Virgin Islands. The matter in controversy exceeds the sum of $75,000, and therefore jurisdiction in this Court is proper. 28 U.S.C. § 1332(c)(2).

10. Ghislaine Maxwell is domiciled in New York.

11. A substantial part of the events giving rise to these causes of action occurred in the Southern District of New York, thus venue in this district is proper. 28 U.S.C. § 1391(b)(2).

## JURY DEMAND

12. Plaintiff hereby demands a trial by jury on all of her claims in this action.

## FACTUAL ALLEGATIONS

### Epstein and Maxwell's Abuse of Doe

13. In the summer of 1994, Jane Doe met Jeffrey Epstein and Ghislaine Maxwell at Interlochen Arts Camp in Michigan when she was only 13-years-old. Doe was there as a student

in the voice program. Doe was sitting alone on a bench between classes when Epstein and Maxwell approached her. Epstein bragged to her about being a patron of the arts and giving scholarships to talented young artists like Doe. Epstein and Maxwell probed her at length about her background, family situation and where she lived. As Doe got up to leave, Epstein requested her mother's phone number back in Florida. She was alarmed by his request, but also feared that she could not refuse the older man's request so she complied and provided him with the phone number.

14. Several weeks later, once Doe had returned from Michigan to Florida, Epstein called Doe's home. Epstein first spoke with Doe's mother about how he mentors young kids and provides scholarships for the arts. He requested to speak to Doe and invited her and her mother to his mansion in Palm Beach. He sent a driver across town to pick them up.

15. Over the course of the next several months, Epstein and Maxwell attempted to groom and mentor 13-year-old Jan Doe. Epstein gave himself the name of Doe's "godfather" while Maxwell acted like an older sister to her. They took her to movies, went shopping with her and lounged around Epstein's estate with her. Epstein and Maxwell then started to make sexual references when they were with her. For instance, Maxwell told Doe that having sex with ex-boyfriends was easy because once you slept with them *"they've been grandfathered in and you could go back and fuck them whenever you wanted."* Epstein also started to slowly display his pedophilic ways when shopping with Doe and Maxwell. Instead of Doe picking out clothes she wanted to wear, Epstein insisted that she pick out and wear little children's cotton underwear. Also, after nearly every visit with Epstein and Maxwell, Epstein sent Doe home with two or three one-hundred-dollar bills to give her mother since "*she's having a hard time and struggling as a widow.*"

16. While these visits made Doe extremely uncomfortable, Epstein and Maxwell made her feel she could not refuse them. During this time, Epstein started to pay for voice lessons for Doe and insisted that Doe could not advance her career in any way without him. When Doe expressed hesitation about spending time with Epstein and Maxwell or acquiescing to their desires, Epstein and Maxwell would threaten Doe, and scold her for being *"ungrateful"*.

3
COMPLAINT FOR DAMAGES

17. During one of Doe's encounters with Epstein, he took her to Mar-a-Lago where he introduced her to its owner, Donald J. Trump. Introducing 14-year-old Doe to Donald J. Trump, Epstein elbowed Trump playfully asking him, referring to Doe, "*This is a good one, right*?" Trump smiled and nodded in agreement. They both chuckled and Doe felt uncomfortable, but, at the time, was too young to understand why.

18. Towards the end of 1994, Epstein invited Doe into his pool house, where he grabbed her, put her on his lap and started masturbating. Epstein told her that was what to expect from photographers who were soon going to be take modeling pictures of her. However, when Doe was ultimately photographed by these professional photographers, they did no such thing.

19. Over the next few years, the sexual abuse escalated. On a regular basis, Epstein would digitally penetrate Doe, force Doe to perform sexual acts on him and apply vibrators on different parts of Doe's body. The abuse occurred at Epstein's home in Palm Beach, Florida, Epstein's townhouse on 9 East 71st Street in New York City, and Epstein's ranch in New Mexico. When travelling to these places, Doe often flew with Epstein and Maxwell in Epstein's private jet.

20. In 1996, when Doe was 16-years-old, Epstein moved Doe to New York City. At first, Epstein put Doe up in his apartment on 65th Street and 2nd Avenue. After a few months, Epstein co-signed the lease for Doe and Doe's mother for an apartment. Additionally, Epstein paid her tuition at a private high school in Manhattan as well.

21. Once Epstein had secured Doe in New York and made her and her family completely dependent on him financially (including, for the roof over their heads), Epstein's abuse of Doe continued to escalate.

22. In 1997, while at Epstein's townhouse on 9 East 71st Street in the City of New York, Epstein asked 17-year-old Doe if she had a boyfriend. Doe replied that she did not. Epstein responded that when she did have a boyfriend she would want the sex to be "*good*" and that she should "*get it over with already*," meaning lose her virginity. Despite Doe's resistance, Epstein then pushed Doe down onto her stomach and raped her. From that point forward for several years in New York, Epstein raped Doe on multiple occasions.

23. During Doe's time in New York, Maxwell also regularly facilitated Epstein's abuse of Doe and was frequently present when it occurred.

24. In 1999, Doe moved to Los Angeles to start a career. Upon moving to Los Angeles and being physically away from Epstein and Maxwell, Doe finally felt like she could escape Epstein's abuse and stopped returning his frequent calls where he would threaten and berate her for not appreciating him.

25. Despite Doe's physical escape from Epstein and Maxwell, the years of abuse and exploitation perpetrated against her by them cause her immeasurable pain and suffering every day.

### Epstein's Death and Will

26. In July 2019, Epstein was indicted by the Unites States Attorney's Office for the Southern District of New York.

27. On August 10, 2019, Epstein was found dead in his jail cell at the Metropolitan Correctional Center, where he was being held pending trial. Upon information and belief, New York City's medical examiner concluded Epstein died by suicide.

28. On August 15, 2019, Epstein's last will and testament (the "Will") was filed in the Probate Division of the Superior Court of the Virgin Islands.

29. The Will indicated that it was executed by Epstein on August 8, 2019 at the Metropolitan Correctional Center. The Will was accompanied by affidavits from Darren K. Indyke and Richard D. Kahn attesting to their "Oath of Willingness to Serve as Executor and Appointment of Local Counsel." Mr. Indyke and Mr. Kahn also filed a Petition for Probate and for Letters Testamentary in the Superior Court of the Virgin Islands.

30. The Will's first article directs Epstein's executors "to pay from my estate all expenses of my last illness, my funeral and burial expenses, the administration expenses of my estate and all of my debts duly proven and allowed against my estate." The Will further directs that "after the payments and distributions provided in Article FIRST," Epstein "give[s] all of my property, real and personal, wherever situated…to the then acting Trustees of The 1953 Trust."

31. On August 26, 2019, Defendant Darren K. Indyke filed a Certificate of Trust with the Superior Court for the Virgin Islands, confirming that he and Defendant Richard D. Kahn are the two Trustees of The 1953 Trust.

32. On September 6, 2019, Magistrate Judge Carolyn P. Hermon-Percell of the Superior Court of the Virgin Islands ordered that Epstein's will be admitted to probate and authorized Mr. Indyke and Mr. Kahn to administer the estate.

## FIRST CAUSE OF ACTION

### (Sexual Assault)

33. Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

34. On numerous occasions over several years, Epstein, with Maxwell's assistance, made violent sexual demands on Plaintiff while placing his hands on her body in a position of dominance and control and while touching Plaintiff in violent and invasive ways.

35. These demands, often made when young Plaintiff was alone with Epstein or with only Epstein and Maxwell, were intended to frighten Plaintiff into submitting to his sexual demands and placed Plaintiff in apprehension of harm.

36. This conduct caused Plaintiff serious and persistent harm and contributed to injuries that Plaintiff continues to suffer.

37. This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130"). *See* N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

## SECOND CAUSE OF ACTION

### (Sexual Battery)

38. Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

39. On numerous occasions over several years, Epstein raped Doe.

40. On numerous occasions over several years, Epstein digitally penetrated Doe with his fingers, tongue and foreign objects.

41. On numerous occasions over several years, Epstein made otherwise unwanted, unlawful, harmful, and offensive physical contact with Plaintiff's body.

42. This conduct caused Plaintiff serious and persistent harm and contributed to injuries that Plaintiff continues to suffer.

43. This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130"). *See* N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

## THIRD CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

44. Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

45. Epstein and Maxwell's campaign of sexual abuse against a teenaged Plaintiff was extreme and outrageous conduct that shocks the conscience.

46. Epstein and Maxwell's serial sexual assaults, committed during the course of a methodical plan of recruitment, enticement, and attack, inflicted severe pain and anguish upon Plaintiff.

47. Epstein and Maxwell directed this conduct at Plaintiff and knew that it would cause severe and lasting emotional distress. Indeed, the conduct caused Plaintiff severe and lasting emotional distress and serious injuries to her mental health.

48. This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130"). *See* N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

## FOURTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress)

49. Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

50. Epstein and Maxwell coaxed Plaintiff, then a teenaged girl, into Epstein's home for a period of several years. They worked hard to groom her. Once under their supervision and influence, Epstein and Maxwell proceeded methodically to sexually abuse Plaintiff.

51. Epstein and Maxwell's conduct was extreme and outrageous, breached a duty owed directly to Plaintiff, endangered her physical safety, and caused severe and lasting emotional distress and serious injuries to Plaintiff's mental health.

52. This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130"). *See* N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

### FIFTH CAUSE OF ACTION

### (False Imprisonment)

53. Plaintiff incorporates by reference all preceding paragraphs and re-alleges them as if set forth fully herein.

54. Defendants, in perpetrating the above-described non-consensual sexual assaults, did, by use of threat and/or physical force, willfully and intentionally confine, detain, imprison and/or restrain Plaintiff without lawful authority to do so, against her will, and without her consent.

55. Plaintiff was aware of, and suffered the extreme effects of, the Defendants' unlawful confinement.

56. As a consequence of Defendants' false imprisonment of Plaintiff, she sustained conscious pain and suffering, Plaintiff's health was impaired, Plaintiff suffered great mental distress, shock, fright and humiliation, and Plaintiff's reputation and character were injured.

57. As a consequence of the conduct of Defendants, Plaintiff has incurred severe psychological trauma and damage, has suffered great humiliation, loss of esteem, mental anguish and suffering.

58. This cause of action is timely under the Child Victims Act, N.Y. C.P.L.R. § 214-g (McKinney 2019), because it arises out of conduct perpetrated against Plaintiff when she was under the age of 18 that constitutes a sexual offense as defined in Article One Hundred Thirty of the New York Penal Law ("Article 130"). *See* N.Y. P.L. § 130.52; N.Y. P.L. § 130.55.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jane Doe prays for this Court to:

59. Issue a judgment declaring that Defendant ESTATE OF JEFFREY E. EPSTEIN by and through its executors, DARREN K. INDYKE and RICHARD D. KAHN, as legal representatives of the Estate of Jeffrey E. Epstein, and Defendant GHISLAINE MAXWELL are liable for the violations of law alleged in this case;

60. Award actual, compensatory, statutory, consequential and punitive damages;

61. Award pre-judgment and post-judgment interest at the highest rate allowed by law; and

62. Grant such further relief as this Court may deem just and proper.

Respectfully submitted,

Dated: January 16, 2020

*R. Ola[signature]*

Kevin Boyle (admission pending)
Robert Glassman (admission pending)
Nathan Werksman (admission pending)

PANISH SHEA & BOYLE LLP
11111 Santa Monica Blvd., Suite 700
Los Angeles, CA 90025
Telephone: (310) 477-1700
Facsimile: (310) 477-1699
boyle@psblaw.com
glassman@psblaw.com
werksman@psblaw.com

/s/ Benedict P. Morelli
Benedict P. Morelli
David T. Sirotkin
Sara A. Mahoney

MORELLI LAW FIRM PLLC

9
COMPLAINT FOR DAMAGES

777 Third Avenue, 31st Floor
New York, NY 10017
Telephone: (212) 751-9800
Facsimile: (212) 751-0046
bmorelli@morellilaw.com
dsirotkin@morellilaw.com
smahoney@morellilaw.com

*Attorneys for Plaintiff*