**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JANE DOE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DARREN K. INDYKE and RICHARD D. KAHN, in their capacities as executors of the ESTATE OF JEFFREY E. EPSTEIN, GHISLAINE MAXWELL, an individual,<br><br>　　　　Defendants. | Case No. 1:20-cv-00484-JGK |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**

**DEFENDANTS' MOTION TO DISMISS IN PART PLAINTIFF'S COMPLAINT**

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. ARGUMENT .................................................................................................................1

    A. Defendants' Motion to Dismiss Is Procedurally Improper ..........................................1

    B. Defendants Misapply New York Law Which Indicates USVI Law Determines The Applicability Of Punitive Damages In This Case ..........................2

        1. In Deciding This Question, The Court Must Apply New York's *Interest Analysis* ................................................................................................2

        2. USVI's Interest Is Considerably Stronger Than New York's Because of the Estate's Overwhelming Ties To The USVI ..........................................3

        3. The *Interest Analysis*'s Focus On "Justice, Fairness, And The Best Practical Result" Points Towards Applying USVI Law ................................4

    C. USVI Law Would Allow For Punitive Damages Against the Estate ........................4

        1. The "Most Important" *Banks* Factor Supports Imposition Of Punitive Damages Against The Estate. ..........................................................5

        2. The Two Lesser *Banks* Factors Do Not Support Barring Punitive Damages Against The Estate. .........................................................................7

III. ANY NEW ARGUMENTS RAISED BY DEFENDANTS IN THEIR REPLY BRIEF SHOULD BE IGNORED ...........................................................................................8

IV. CONCLUSION ..............................................................................................................9

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Gov't of the V.I. v. Connor*
    60 V.I. 597 (2016) .................................................................................................. 5

**FEDERAL CASES**

*Babcock v Jackson*
    12 NY2d 473 (1963) ............................................................................................. 4

*Banks v. Int'l Rental & Leasing Corp.*
    55 V.I. 967 (2011) ................................................................................................. 4

*Booth v. Bowen*
    No. CIV. 2006-217, 2008 WL 220067, at *5 (D.V.I. Jan. 10, 2008) ..................... 7

*Com- Tech Assocs. v. Comput. Assocs. Int'l, Inc.*
    753 F. Supp. 1078, (E.D.N.Y. 1990) .................................................................... 2

*Crabtree ex rel. Kemp v. Estate of Crabtree*
    837 N.E.2d 135 (Ind. 2005) .................................................................................. 6

*Estate of Mayer v. Lax, Inc.*
    998 N.E.2d 238 (Ind. Ct. App. 2013) ................................................................... 6

*Feldman v. Knack*
    170 A.D.3d 667 (N.Y. App. Div. 2019) ............................................................... 4

*Golden v. Wyeth, Inc.*
    No. 4-CV-2841, 2013 WL 4500879, at *3 (E.D.N.Y. Aug. 20, 2013) ............. 3, 5

*Hamilton v. Dowson Holding Co.*
    51 V.I. 619 (D.V.I. 2009) ..................................................................................... 7

*Hunter v Palisades Acquisition XVI, LLC*,
    16 CIV. 8779 (ER), 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017) ........... 1

*Klaxon Co. v. Stentor Elec. Mfg. Co.*
    313 U.S. 487 (1941) .............................................................................................. 2

*Nat'l Jewish Democratic Council v. Adelson*
    No. 18 Civ. 8787 (JPO), 2019 WL 4805719, at *6 (S.D.N.Y. Sept. 30, 2019) .... 2

*Nicholas v. Wyndham Int'l, Inc.*
    301 F. Supp. 2d 407, 410 (D.V.I. 2002) ............................................................... 4

*Padula v. Lilarn Prop. Corp.*
    644 N.E.2d 1001 (N.Y. 1994) .............................................................................. 2

*Rapay v. Chernov*
  No. 16 Civ. 4910, 2017 WL 892372, at *1, 8 (S.D.N.Y. Mar. 6, 2017) ............................... 2

*Simon v. Philip Morris Inc.*
  124 F. Supp. 2d 46 (E.D.N.Y. 2000) (citing *Babcock v Jackson*, 12 NY2d 473, 481
  (N.Y. 1963) ........................................................................................................................ 3

**STATE CASES**

*Alain Ellis Living Tr v. Harvey D. Ellis Trust (2016).*
  308 Kan. at 1046 ................................................................................................................ 8

*David B. v Millar*
  2 AD3d 763, 764 (N.Y. 2003) ............................................................................................ 8

*Haralson v. Fisher Surveying, Inc.*
  201 Ariz. 1, 3-4 (2001) (en banc) ....................................................................................... 8

*State Farm Fire and Cas. Co. v LiMauro*
  103 AD2d 514 (N.Y 1984) ................................................................................................. 8

**TREATISES**

Barry A. Lindahl, 2 Modern Tort Law: Liability and Litigation § 20:24 (2d ed., June 2019
  Update) ............................................................................................................................... 8

Zitter, 30 A.L.R.4th 707 ................................................................................................................ 8

## I. INTRODUCTION

Plaintiff Jane Doe ("Plaintiff"), by her undersigned attorneys, respectfully submits this memorandum of law in opposition to Defendants' motion to dismiss in part Plaintiff's complaint (ECF Nos. 36-37). First, Defendants contend that Plaintiff's claims based on torts that occurred outside of New York and those that occurred when she was an adult are time-barred. Plaintiff does not dispute this point and did not allege such in her complaint[1]. Second, Defendants argue that Plaintiff's fifth cause of action for false imprisonment must be dismissed in its entirety as untimely. Plaintiff does not oppose this argument and will hereby withdraw that cause of action against Defendants. And finally, Defendants assert that Plaintiff's claim for punitive damages against the Co-Executors must be dismissed. Not so. Defendants' argument regarding punitive damages is not only procedurally improper but it ignores the law of the governing jurisdiction which decides this question: that of the United States Virgin Islands ("USVI").

## II. ARGUMENT

### A. Defendants' Motion to Dismiss Is Procedurally Improper

First, Defendant's motion to dismiss Plaintiff's request for punitive damages is procedurally improper because punitive damages are not an independent cause of action. *See, e.g., Hunter v Palisades Acquisition XVI, LLC*, 16 CIV. 8779 (ER), 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017) ("Because punitive damages are a form of damages, not an independent cause of action, a motion to dismiss a prayer for relief in the form of punitive damages is procedurally premature.") (internal quotations omitted). The proper vehicle for Defendants' attempt to strike Plaintiff's

---

[1] To be clear, however, Plaintiff did suffer tremendously both outside of New York and as an adult as a result of Decedent Jeffrey Epstein's repeated sexual abuse of her. For the purposes of this lawsuit, Plaintiff only brings claims against Defendants for the numerous rapes and assaults against her while she was a minor in the state of New York.

1

prayer for punitive damages (a mode of relief) is a motion to strike under Federal Rule of Civil Procedure 12(f).  *See, e.g., Rapay v. Chernov*, No. 16 Civ. 4910, 2017 WL 892372, at *1, 8 (S.D.N.Y. Mar. 6, 2017); *Com- Tech Assocs. v. Comput. Assocs. Int'l, Inc.*, 753 F. Supp. 1078, 1093 (E.D.N.Y. 1990) (denying Rule 12(f) motion to strike punitive damages).

Accordingly, Defendants' motion should be denied on this ground alone.  Should the Court decide to entertain the motion on its merits, though, it should still be denied.

### B. Defendants Misapply New York Law Which Indicates USVI Law Determines The Applicability Of Punitive Damages In This Case

Defendants fail to address in the motion the likelihood that USVI law applies to the question of whether Plaintiff may recover punitive damages in this case against Defendants. Based on the following points and authorities, it does.

#### 1. In Deciding This Question, The Court Must Apply New York's *Interest Analysis*

A federal court must look to the choice-of-law rules of the forum state in resolving conflicts of law.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004).  The forum state in this matter is New York.  Therefore, New York choice of law analyses govern this conflict.

In the context of tort law, "New York utilizes interest analysis to determine which of two competing jurisdictions has the greater interest in having its law applied in the litigation." *Padula v. Lilarn Prop. Corp.*, 644 N.E.2d 1001, 1002 (N.Y. 1994). "[U]nder New York law—for punitive damages in particular—a court must consider the object or purpose of the wrongdoing to be punished and give controlling weight to the law of the jurisdiction with the strongest interest in the resolution of the particular issue presented." *Nat'l Jewish Democratic Council v. Adelson*, No. 18 Civ. 8787 (JPO), 2019 WL 4805719, at *6 (S.D.N.Y. Sept. 30, 2019).  Further, **because "punitive damages are designed to punish the defendant, . . . the choice-of-law inquiry for punitive**

2

**damages provisions is necessarily "defendant-focused."**" *Id.* (citing *Golden v. Wyeth, Inc.*, No. 4-CV-2841, 2013 WL 4500879, at *3 (E.D.N.Y. Aug. 20, 2013)).  Importantly, in conducting this analysis, New York courts seek to achieve "[j]ustice, fairness, and the best practical result…" *Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46, 55 (E.D.N.Y. 2000) (citing *Babcock v Jackson*, 12 NY2d 473, 481 (N.Y. 1963).

### 2. USVI's Interest Is Considerably Stronger Than New York's Because of the Estate's Overwhelming Ties To The USVI

Here, the USVI's interest in the availability of punitive damages supersedes New York's by a long shot.  *First*, the Defendant is the Estate.  The Estate was probated in the USVI, where it is governed by USVI laws.  Compl. (ECF Doc. 9) ¶¶ 28, 29.  *Second,* Defendants Indyke and Kahn, both named in their capacities as executors of the Estate, were authorized by USVI Magistrate Judge Carolyn P. Hermon-Percell to administer the Estate.  Compl. ¶ 32.  In fact, as legal representatives of the Estate, Darren K. Indyke and Richard D. Kahn are deemed citizens of the USVI.  Compl. ¶ 9.  *Third*, Epstein himself was a Virgin Islander and was domiciled there, not in New York.  Compl. ¶ 9.

Conversely, New York's interest in having its law applied is weak.  As previously noted, the Estate is not domiciled in New York, nor is it in probate in New York.  Further, Epstein was not a domiciliary of New York.  In short, with regard to the punitive damages question, there is no "there" in New York.

Because of the "defendant-focused" nature of punitive damages, the law of the USVI—where the Estate was probated, where the Estate is actively overseen, and where Epstein was domiciled—should decide the question as to the applicability of punitive damages against the Estate.

3

### 3. The *Interest Analysis*'s Focus On "Justice, Fairness, And The Best Practical Result" Points Towards Applying USVI Law

Moreover, justice and fairness require the Court to apply USVI law in deciding this question. *First*, as aforementioned, the USVI has strong interests considering it is the home of the Estate and was the home of Epstein. The USVI clearly is most "intimately concerned with the outcome of (the) particular litigation." *Babcock v Jackson*, 12 NY2d 473, 481-82 (1963). Therefore, the applicability of punitive damages against the Estate should be decided by USVI law.

*Second*, the practical result of applying New York law, as opposed to USVI law, is that it will reward Epstein for committing suicide by shielding him from punishment for his heinous sexual abuse of his victims. Had Epstein not committed suicide, it is indisputable he would face punitive damages alongside Maxwell.[2] Thus, justice and fairness require what is also the best practical result: the application of USVI law in deciding this question.

### C. USVI Law Would Allow For Punitive Damages Against the Estate

To determine USVI common law, USVI courts apply what is known as the *Banks* analysis. *See Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 979 (2011). "[I]nstead of mechanistically following the Restatements, courts should consider three non-dispositive factors to determine Virgin Islands common law: (1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) *most*

---

[2] *See, e.g.*, *Nicholas v. Wyndham Int'l, Inc.*, 301 F. Supp. 2d 407, 410 (D.V.I. 2002) ("[P]unitive damages may be awarded for conduct that is outrageous, because of defendant's evil motive or [her] reckless indifference to the rights of others."); *Feldman v. Knack*, 170 A.D.3d 667, 670 (N.Y. App. Div. 2019) (punitive damages appropriate in sexual assault case because "the defendant's acts were particularly heinous").

*importantly*, which approach represents the soundest rule for the Virgin Islands." *Gov't of the V.I. v. Connor*, 60 V.I. 597, 600, 602 (2016) (emphasis added).  An analysis of these three factors clearly indicates punitive damages are available under USVI law in this case.

> **1.    The "Most Important" *Banks* Factor Supports Imposition Of Punitive Damages Against The Estate.**

The "**most important**[]" of those factors—the "approach [that] represents the soundest rule for the Virgin Islands"—clearly points towards allowing punitive damages against the Estate. In fact, the Government of the USVI filed a complaint against the Estate *in which the USVI seeks punitive damages against the Estate.* In its complaint, the USVI affirms the soundness of permitting the recovery of punitive damages against the Estate.  First, the USVI states the purpose of punitive damages "is to punish the defendant for outrageous conduct that is reckless or intentional" and "to deter others from engaging in such conduct in the future."  Additionally, the USVI states "punitive damages are especially important in the case of persons or companies that have money, assets, and power that mere fines, penalties, and economic damages are simply not sufficient."  The Government of the USVI's seeking punitive damages should be dispositive in this *Banks* analysis.

Of course, the USVI properly identifies the benefits to the Virgin Islands of permitting punitive damages against the Estate.  An independent analysis too strongly favors this approach for the USVI.  Punitive damages in the Virgin Islands are designed to both punish wrongdoers and to deter others from engaging in similar conduct. *See, e.g.*, *Guardian Ins. Co. v. Gumbs*, No. ST-15-CV-195, 2016 WL 9525609, at *10 (V.I. Super. Aug. 22, 2016).  The importance to the USVI of deterring the kind of conduct Epstein engaged in in the USVI is obvious.  It is on the USVI where Epstein not only abused countless girls and young women, but also "abused [the] privileges of residency," specifically choosing the Virgin Islands as the location for his heinous crimes because of its seclusion and isolation, and thereby contributing to a public perception that the

5

Virgin Islands is "a hiding place for human trafficking and sex crimes."

Critically, Epstein committed suicide in prison with full knowledge that, to put it plainly, the jig was up. He faced not only the strong likelihood of life in prison, but also claims seeking punitive damages for his horrific acts. He committed suicide fully aware of that reality. The fact that Epstein would have been subject to punitive damages claims if he had not taken his own life—and that he committed suicide *knowing* he was subject to such claims—further militates in favor of permitting punitive damages against his Estate. This specific circumstance is recognized and accounted for in other jurisdictions like, for example, in Indiana where the Indiana Supreme Court indicated its intention to decline applying its normal bar on punitive damages "where a tortfeasor seems to have considered his own death as an escape from punitive damages incident to some intentional tort" by committing suicide. *See Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 139 (Ind. 2005).[3] In this circumstance, the USVI would clearly benefit from allowing for punitive damages against his Estate which would otherwise be available against Epstein (and the very same money now sitting in trust) had he not killed himself with full knowledge of the weight of the claims against him.

While courts in the USVI have favorably cited to the Section 908 of the Restatement, the USVI Supreme Court in *Connor, supra*, 60 V.I. at 600 rejected "mechanistically following the Restatements" and instead instructed USVI courts to apply the *Banks* analysis instead. The Court should follow its heed.

In conclusion, it is beyond dispute that the soundest rule for the USVI would be to allow

---

[3] *See also Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 259 (Ind. Ct. App. 2013) (noting a "possible exception" to the rule proscribing punitive damages against an estate "if the tortfeasor committed suicide to attempt to escape such damages").

punitive damages against the Estate:  1) Epstein was a domiciliary of the USVI; 2) the Estate is probated in the USVI and actively administered through its courts; 3) the Government of the USVI is *itself* seeking punitive damages against the Estate; and 4) Epstein committed suicide knowing of the onslaught of claims against him.

### 2. The Two Lesser *Banks* Factors Do Not Support Barring Punitive Damages Against The Estate.

As for the other two elements of the *Banks* analysis, they do not provide any justification for denying punitive damages against the Estate.  *As for the first factor*, Plaintiff is not aware of any USVI decision on the question of whether to permit punitive damages in this circumstance. While the federal court in the USVI declined to allow punitive damages in a case where the personal representatives of an estate seek punitive damages against a third party for the decedent's wrongful death, it goes without saying the circumstances there are entirely different from the one here.[4]  They seek punitive damages in favor of an estate, whereas here punitive damages are sought *against* an estate.  Simply, the circumstance at issue here has not yet been addressed by a USVI court.

*As for the second, less-important factor* of the *Banks* analysis, while it is true that barring punitive damages against an estate is the majority view, a significant minority has reached the opposite conclusion: ten (Arizona, Delaware, Indiana, Ohio, Pennsylvania, South Carolina,

---

[4] *See, e.g.*, *Hamilton v. Dowson Holding Co.*, 51 V.I. 619, 628 (D.V.I. 2009) (personal representative seeks punitive damage against operator of a hotel where decedent was shot and killed); *Booth v. Bowen*, No. CIV. 2006-217, 2008 WL 220067, at *5 (D.V.I. Jan. 10, 2008) (personal representative seeks punitive damages against scuba diving instruction company after decedent drowned during scuba course)

7

Alabama, Montana, New Hampshire, and West Virginia)[5] of the approximately 35 jurisdictions to address the question have decided punitive damages should be allowed against an estate, including for reasons the USVI *as we write this* seeks punitive damages against the Estate: adequate compensation for victims, punishment of wrongdoers, deterrence of other future wrongdoers, and social condemnation of uniquely abhorrent behavior. *Haralson v. Fisher Surveying, Inc.*, 201 Ariz. 1, 3-4 (2001) (en banc); s*ee also generally* Zitter, 30 A.L.R.4th 707; Barry A. Lindahl, 2 Modern Tort Law: Liability and Litigation § 20:24 (2d ed., June 2019 Update).  Importantly, most of the jurisdictions adopting the majority rule have—unlike the Virgin Islands—passed a statute codifying a prohibition on punitive damages against an estate. *See Alain Ellis Living Tr.*, 308 Kan. at 1046 ("[A]t least 14 of the cases adopting the position that an injured party cannot recover punitive damages from the estate of a tortfeasor—the majority rule—reached that conclusion because their respective state legislatures had passed a statute stating that position.").  Therefore, most of the jurisdictions that bar punitive damages against an Estate do so as an expression of legislative, not judicial, will.

## III. ANY NEW ARGUMENTS RAISED BY DEFENDANTS IN THEIR REPLY BRIEF SHOULD BE IGNORED

Any new arguments raised by Defendants in the reply brief would be improper and should be ignored.  "It is beyond cavil that raising a new substantive issue of law for the first time in a reply brief is improper . . ."  *State Farm Fire and Cas. Co. v LiMauro*, 103 AD2d 514, 521-22 (N.Y 1984); *see also David B. v Millar*, 2 AD3d 763, 764 (N.Y. 2003) ("This argument is not properly before this Court since it is raised for the first time in [] reply brief").

---

[5] See Jay M. Zitter, *Claim for punitive damages in tort action as surviving death of tortfeasor or person wronged*, 30 A.L.R.4th 707 (1984 ed., 2019 Suppl.).

**IV.    CONCLUSION**

  For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss Plaintiff's claim for punitive damages.

                   Respectfully submitted,

Dated: April 27, 2020          By: /s/ Robert Glassman
                    Robert Glassman
                    PANISH SHEA & BOYLE LLP
                    11111 Santa Monica Blvd., Suite 700
                    Los Angeles, CA 90025
                    Telephone:  (310) 477-1700
                    Facsimile: (310) 477-1699
                    glassman@psblaw.com
                    *Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I, Robert S. Glassman, hereby certify that Plaintiff's Memorandum of Opposition to Defendants' Motion to Dismiss contains 2,583 words and complies with the formatting rules set forth in the *Individual Practices of Judge John G. Koeltl*.

Respectfully submitted,

Dated: April 27, 2020                                By:   /s/ Robert Glassman
                                                           Robert Glassman
                                                           PANISH SHEA & BOYLE LLP
                                                           11111 Santa Monica Blvd., Suite 700
                                                           Los Angeles, CA 90025
                                                           Telephone:  (310) 477-1700
                                                           Facsimile: (310) 477-1699
                                                           glassman@psblaw.com
                                                           *Attorneys for Plaintiff*