```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK

In re:                            :
                                       Docket #20cv484
 JANE DOE,                        : 1:20-cv-00484-JGK-DCF

                  Plaintiff,      :

  - against -                     :

 INDYKE, et al.,                  : New York, New York
                                     August 5, 2020
                  Defendants.     :

-----------------------------------: TELEPHONE CONFERENCE

                    PROCEEDINGS BEFORE
               THE HONORABLE DEBRA C. FREEMAN,
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:      PARISH SHEA & BOYLE, LLP
                        BY:  ROBERT GLASSMAN, ESQ.
                             NATHAN WERKSMAN, ESQ.
                        11111 Santa Monica Blvd., Suite 700
                        Los Angeles, California  90025

For the Defendant  -    HADDON, MORGAN & FOREMAN, PC
Ghislaine Maxwell:      BY:  LAURA MENNINGER, ESQ.
                        150 East Tenth Avenue
                        Denver, Colorado  80203

For the Defendant -     TROUTMAN PEPPER HAMILTON SANDERS LLP
Co-Executors of the     BY:  MARY GRACE METCALFE, ESQ.
Estate of Jeffrey E.         BENNET MOSKOWITZ, ESQ.
Epstein:                875 Third Avenue
                        New York, New York  10022



Transcription Service: Carole Ludwig, Transcription Services
                       155 East Fourth Street #3C
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>**Witness**</u> | <u>**Direct**</u> | <u>**Cross**</u> | <u>**Re-Direct**</u> | <u>**Re-Cross**</u> | <u>**Court**</u> |
|---|---|---|---|---|---|

None

<u>**E X H I B I T S**</u>

| <u>**Exhibit Number**</u> | <u>**Description**</u> | <u>**ID**</u> | <u>**In**</u> | <u>**Voir Dire**</u> |
|---|---|---|---|---|

None

1

```
                                                        3
 1

 2            THE COURT:  So this is Doe versus Indyke,

 3   20cv484, and this is Judge Freeman, can I have your

 4   appearances for the record starting with plaintiff.

 5            MR. ROBERT GLASSMAN:  Good morning, Your Honor,

 6   this is Robert Glassman for the plaintiff.

 7            MR. NATHAN WERKSMAN:  Good morning, Your Honor,

 8   Nathan Werksman for plaintiff.

 9            THE COURT:  I'm sorry, same firm?

10            MR. WERKSMAN:  Yes.

11            THE COURT:  Okay, I'm not seeing your name on

12   the docket, how do you spell your last name?

13            MR. WERKSMAN:  W-E-R-K-S-M-A-N.

14            THE COURT:  Okay, who do I have for defendant,

15   defendants?

16            MS. LAURA MENNINGER:  Your Honor, Laura

17   Menninger here on behalf of the defendant, Ghislaine

18   Maxwell.

19            THE COURT:  Okay.  Do I have for the executor?

20            MS. MARY GRACE METCALFE:  Your Honor, this is

21   Mary Grace Metcalfe of Troutman Pepper on behalf of

22   the co-executors. I know that Mr. Moskowitz is

23   planning on joining us, he lost power and internet

24   during the storm last night and is driving to a place

25   where he can get internet and reception. So if it's
```

```
 1                                          4
 2  all right with everyone if we could wait just a couple
 3  of minutes for him to join.
 4            THE COURT:  That's fine, I just got off a
 5  conference call where out of four lawyers two had no
 6  power, no internet, no landline service and they were
 7  both out on the street using cell phones trying to
 8  call in and saying we have no access to our files, we
 9  have no access to anything.  That's usually someone
10  dropping off, that beep, so let me make sure I still
11  have the people I've already identified. I have Mr.
12  Glassman?
13            MR. GLASSMAN:  Yes.
14            THE COURT:  Mr. Werksman?
15            MR. WERKSMAN:  Here.
16            THE COURT:  Okay, Ms. Metcalfe?
17            MS. METCALFE:  I'm here.
18            THE COURT:  Okay, and I had counsel for Ms.
19  Maxwell, Ms. Menninger?
20            MS. MENNINGER:  Yes, I'm here, Your Honor.
21            THE COURT:  Okay, I can't actually say who did
22  we lose. All right, who just joined?
23            MR. BENNET MOSKOWITZ:  Hi, this is Bennet
24  Moskowitz at Troutman Sanders, can Your Honor hear me?
25            THE COURT:  I can, I understand you've had a
```

```
 1
 2  power outage problem?
 3          MR. MOSKOWITZ:  Yes, I actually was already on
 4  the call listening to everyone (indiscernible), I
 5  apologize, my reception is terrible but what was
 6  described is correct, I have, we got hit pretty hard
 7  by this storm and I've been driving along what seems
 8  like the entire Eastern Seaboard to find a place with
 9  consistent cell phone reception.
10          THE COURT:  Great, okay, we're having fun
11  trying to have these conferences today in the
12  aftermath of the storm. So I have others who are
13  apparently on the call based on the number of
14  participants that were identified when I joined. Is
15  there anyone else representing a party to the case?
16  No.  Is there anyone on the call who is an attorney in
17  one of the other cases involving the Epstein estate?
18  Okay.  Do I have my law clerk, Hanna Martin?
19          THE CLERK:  Yes, Judge, I'm here.
20          THE COURT:  Okay, anyone else from my
21  chambers?  All right, so who else do I have on this
22  call, if you could just let me know who's on, I'd
23  appreciate that, do I have any members of the press?
24          FEMALE VOICE:  Yes, this is Emily
25  (indiscernible) --
```

```
 1                                                    6
 2            THE COURT:  I'm sorry, you're cutting out.
 3            FEMALE VOICE:  I apologize, Your Honor, I was
 4   simply identifying myself, this is Emily
 5   (indiscernible) I am a member of the media and I am on
 6   the call.
 7            THE COURT:  Okay, all right, is there anyone
 8   else, I don't actually need all the specific
 9   identifications, members of the press, I'll just ask
10   you to mute your phones. Is there anyone else who does
11   not fit one of those categories as in a lawyer for the
12   parties, a lawyer for or a representative of a party
13   in another case, someone from my chambers or a member
14   of the press, or is that everybody? Okay, I'm not
15   hearing anything so I'm assuming that's who we've got
16   on this call. That's all fine.  You know, if Mr.
17   Moskowitz is an important person to have on the call
18   and if we lose him or if his service is not adequate,
19   we can adjourn the call in order to be able to have
20   everybody to be able to participate.  We really didn't
21   need a pandemic followed by a hurricane to give us two
22   separate problems, but the reason that I wanted to
23   have the call, aside from the fact that I seem still
24   to have the discovery dispute about the damages
25   computation, I had gotten this proposed scheduling
```

7

1

2  order sent to me late July by Mr. Moskowitz, and it

3  didn't indicate that it was jointly submitted. Oh,

4  actually, I guess it did, it said it was on behalf of

5  all parties. But the proposed scheduling order

6  included discovery from defendant Maxwell and I just

7  wanted to have counsel for Ms. Maxwell to have a

8  chance to address the extent to which she's currently

9  comfortable participating in discovery in the case

10  given that there has now been an indictment returned,

11  and just to make sure we're all clear on that issue

12  involving her active participation in the case. So

13  those were the two issues, that and then the discovery

14  issue involving the computation of damages that I had

15  on my agenda. Does anybody have anything else on your

16  agendas for me?

17          MR. GLASSMAN:  Your Honor, this is Robert

18  Glassman, we still would like to discuss or I should

19  say I would still like to discuss with Your Honor the

20  fact that we haven't received any documents from the

21  estate.  And after I sent the Court a letter

22  addressing some of the discovery issues I was

23  forwarded by counsel for the co-executors a draft

24  confidentiality agreement and nondisclosure agreement.

25  I don't, you know, so I'd like to discuss that. I

8

don't see how the documents that are responsive to our

discovery requests would be covered under that, that

agreement, and so I'm not inclined to sign it, but I'd

like to hear Your Honor's thoughts on it. Because, I

mean the most important thing for us at this juncture is

just to get documents, our discovery is now more than

three months outstanding and we still don't have any

evidence from the co-executors. So I'd like to kind of

get that moving if we can.

      THE COURT:  All right, just to check because

perhaps I am losing my mental capacities here, I did,

I did indicate I was recording this, right?

      MR. GLASSMAN:  Yes.

      MS. METCALFE:  Yes, Your Honor.

      THE COURT:  Okay, good, okay, I don't want to

go through this and have forgotten to do that. All

right, on that last issue about documents from the

estate, is that teed up for me, have you had a full

good faith conference, have you, and that and

regarding a protective order, have you gone back and

forth and is that something where you are stuck in

your discussions and you need me to pay attention to

it?  I don't remember seeing something on that.

      MR. MOSKOWITZ:  Your Honor, it's Bennet

```
1                                                    9

2  Moskowitz.  First, let me just pause and say can you

3  hear me well enough at this moment?

4         THE COURT:  I can hear you well enough, not

5  well, but well enough.

6         MR. MOSKOWITZ:  Okay, this is the first time

7  I'm hearing that the other side won't sign the

8  document, in fact, I understood the opposite. So the

9  answer to your question is a firm no, we have not

10 discussed their refusal to sign what has been entered

11 in every other case against the executors. And, of

12 course, it kind of boggles our minds because this case

13 is brought by someone acting through an anonymous

14 name. To the extent we produced a single document that

15 says the name of this client or other people, that's

16 reason alone to have a confidentiality agreement. So,

17 yeah, there is still plenty to discuss and, no, the

18 meet and confer process has not, if it has started, it

19 certainly isn't complete.

20        THE COURT:  All right, let's take these issues

21 in turn.  Let me start with the question that I had

22 about defendant Maxwell's participation in the case in

23 light of the changed circumstances on the criminal

24 investigation turning into a criminal prosecution. Can

25 I hear from the parties as to whether you have been
```

1

2  discussing this, whether this jointly proposed

3  scheduling order is, in fact, being jointly proposed

4  and is acceptable?  I just want to make sure before I

5  sign off on that.

6          MS. MENNINGER:  Your Honor, this is Laura

7  Menninger on behalf of Ms. Maxwell.  We have had some

8  discussions, at some point counsel for the plaintiff

9  had indicated the desire to take her deposition in

10  this case and I pointed out that she is in custody at

11  the MDC and at this moment in time no one is allowed

12  inside of the MDC, myself and her other attorneys

13  included. And so I was unaware of any ability to take

14  a deposition right now.  Certainly, obviously, things

15  may change over the course of the case and I think we

16  might need to come back to Your Honor if it's still an

17  issue. I believe that our position will be, although I

18  don't know that it's ripe for today, similar as it was

19  in a prior case, that is we would ask in the future,

20  Your Honor, that her responses to interrogatories and

21  her deposition be put off so that, you know, if there

22  is an ability to answer questions versus asserting her

23  Fifth Amendment right in the future in this case, then

24  we could address it at that time.  But apart from the

25  interrogatories and the deposition I think this

11

2  scheduling order sets forth our joint proposal.

3         THE COURT:  Well the joint proposal only has

4  her serving initial disclosures, but it also has a

5  deadline for the completion of all fact discovery, it

6  has a deadline for serving all document requests and

7  interrogatories, it doesn't say anything about staying

8  any responses in any way. So there's no stay built

9  into this for her and the other parties would be

10 completely within their rights based on this schedule,

11 if I approve it, to be assuming that she would be

12 responding to discovery requests and responding to a

13 deposition demand, if it's feasible, certainly

14 interrogatory responses by the deadline set by the

15 rules. And if that's not something that you're

16 prepared to do, I think it should be discussed with

17 the parties and brought to my attention before I sign

18 off on this order.

19        I will say for everyone's benefit that it is

20 not uncommon for discovery against someone who is

21 currently involved as a defendant in a criminal

22 prosecution, for discovery to be stayed because of the

23 implications of the Fifth Amendment invocation in a

24 civil case.  As I'm sure you know, she could take the

25 Fifth in a civil case, and it's very common for

1

2 criminal defendants to do that, lawyers often urge that

3 they do, but then there can be an adverse inference from

4 that in the civil case that can really prejudice her

5 defense. So I was just surprised that I didn't have any new

6 application, given that she was actually indicted, and given

7 that last time around in another case, true, but

8 nonetheless, I was being told, well, it's only an

9 investigation, an investigation could go on forever and we

10 don't know if she's actually going to be charged with

11 anything and so on, and obviously we have a changed

12 circumstance.

13         So I don't want to argue the case for counsel, but

14 I was just surprised that it wasn't coming up and wasn't

15 being dealt with and that a prosed schedule was being put in

16 front of me that did not address it and seemed to gloss over

17 the issue. And I would be surprised if the issue doesn't

18 come back come time to respond to interrogatories or come

19 time for a deposition. Even apart from how easy or difficult

20 it is to conduct a deposition while somebody is at the MDC.

21 Let me hear on plaintiff's side since you're the one I

22 assume will want the discovery.

23         MR. GLASSMAN:  Yeah, thank you, Your Honor, and

24 again, this is Robert Glassman. We, counsel for Ms.

25 Maxwell, for the co-executors, and for us, we've

13

engaged in several emails, we've talked on the phone

about discovery in this case, and, you know, it wasn't

brought up once that, you know, there would be some

kind of stay as to Ms. Maxwell's participation.  Ms.

Menninger is correct when she said I did request, you

know, some dates for Ms. Maxwell's deposition, and she

advised that it would be very difficult in light of

the circumstances with Ms. Maxwell right now, and it

really wasn't feasible to take her deposition at this

point. And I, I mean I understand that.

            But this scheduling order that the co-

executors filed was, you know, as Your Honor pointed

out, jointly submitted after we discussed and

deliberated over the dates. You know, everyone gave

their input as to what they thought would be realistic

as far as the dates are concerned. So I, you know, I

would like, yeah, unless there is now an objection to

it, I think everyone's, everyone has approved this and

we're looking forward to it being entered by the

Court.  You know, so if there's, however, if there is

an objection on Ms. Maxwell's side to discovery being

directed or propounded on her, then I just, I think

we'd have to --

            THE COURT:  All right, I'm not trying to make

14

1

2  arguments on behalf of any party, that's the lawyer's

3  job and not mine, it's just that I had Ms. Maxwell as

4  a defendant previously where an argument was made that there

5  should be a hold on discovery because of the criminal

6  investigation. And there were discussions raised at that

7  time about the fact that it was merely an investigation with

8  no obvious end in sight. And so I'm just surprised and a

9  little confused, and if Ms. Maxwell's counsel on her behalf

10 is, you know, is jointly making the submission and is

11 comfortable with this, then it's all right with me and I'm

12 happy to sign off on it. I just didn't want to sign an order

13 and then have it all derailed because this issue, which I

14 assumed was coming up, you know, would come up after I sign

15 the order and throw the whole thing into some uncertainty. I

16 would rather find out if this is an issue that is or is not

17 being raised. If it's not been raised to date, find out why

18 it's not been raised to date.  And, you know, I don't really

19 need your confidential thinking, I just want to make sure

20 that I'm not signing an order only to have you come back in

21 30 days and say, you know, we never anticipated that this

22 would mean that Ms. Maxwell would be answering

23 interrogatories and would be deposed, because that's not

24 what this order says.

25          So let's, I mean maybe I send you back to talk it

15

1
2    over and make sure that you're all in accord, and if you're
3    not I'll decide the issue.  Or I could just sign off on the
4    order now and wait and see what happens, you know, but I
5    would just be rather stunned if already having raised the
6    issue elsewhere, the issue didn't get raised here.

7              MS. MENNINGER:  Your Honor, this is Laura
8    Menninger again. I would be in support of sending the
9    parties back to have discussions about it, it was not
10   part of our discussions.  There were discussions that
11   we had that we were trying to come up with dates that
12   were reasonable but could change, you know, depending
13   on how things change in the future, and obviously
14   things are moving quickly and there have been a number
15   of developments that have taken place over the last 30
16   days, so it's a little difficult right now to
17   anticipate all of the issues that may come up with
18   these proceedings occurring simultaneously.

19             So if Your Honor would like us to take account
20   of those issues and have a further discussion about a
21   schedule, we are happy to go back and confer with
22   counsel for the other parties to reflect that in this
23   initial scheduling order rather than asking to amend
24   it when the discovery issues arise.

25             THE COURT:  Why don't I do this, why don't I

1

2  approve this schedule as to the first three points

3  which would be the initial disclosures deadline, the

4  initial document request interrogatories deadline and

5  the motions to amend the pleading or join any other

6  parties.  Which will take us to August 21, which is at

7  least keeping you moving for right now.

8          On the fact discovery deadline, I think what

9  I'm going to do is just send you to go back and talk

10 about that a little bit more and make sure that you're

11 all on the same page. And then the expert discovery

12 can certainly be geared to the close of fact discovery

13 in the same sort of way as it is now.  But, you know,

14 I think that you should just make sure that you're of

15 a mind if you're going to put something forward as a

16 joint proposal, make sure it really is a joint

17 proposal and it's not something that gets people

18 exasperated because you want to re-discuss it, you

19 know, 30 days from now.

20         So go, and then if you agree, yeah, let's just

21 say November 6, and if we end up making an

22 application, we do, it's okay with me. And in terms of

23 the stipulation to modify interim deadlines, if that

24 meant the August 21 deadline that you wanted to agree

25 to stipulate to modify that, you can still stipulate

17

 1
 2  to modify that as is reasonable without coming back to
 3  me, all right?  I just want to avoid problems and I
 4  just see one on the horizon that I'd rather you talk
 5  about before it comes up as a problem, okay?
 6           By the way, this may be the only case of the
 7  cluster, I'm not sure if there's more than one, maybe
 8  the only one where we don't have a stay in place of
 9  the case generally because of the plaintiffs
10  participating in the claims program that was set up.
11  Is that right, let me ask on defendants' side, is this
12  the only one?
13           MR. MOSKOWITZ:  Your Honor, Bennet Moskowitz
14  for the co-executors, with the exception of one other
15  case that was filed the last month, so it's really not
16  of the same grouping if you are looking at it from
17  this perspective, this is the only case that is not
18  stayed. The other case that I was talking about, by
19  the way, our answer deadline hasn't even come. And I
20  think Your Honor is right to raise that, and this
21  coupled with what we just heard from Ms. Menninger
22  about the potential, whatever it is, at least partial
23  staying of discovery against Ms. Maxwell, makes it
24  especially appropriate from my perspective for the
25  parties to discuss the case schedule in general. You

18

1

2  know, I don't have to belabor the record, when, you

3  know, we've done many calls in other cases. I get this

4  is a different one, but the estate's position is still

5  unchanged, you know, we have not moved for a stay, but

6  there are many reasons that render it a very sensible

7  thing to do. And the fact that now this is the,

8  practically, virtually the only case that's moving

9  forward, necessitates that the parties and potentially

10 again with the Court discuss that issue.

11          THE COURT:  Well I will note that this

12 proposed scheduling order was submitted certainly on

13 behalf of the estate, so I'm assuming you have

14 discussed these issues before submitting that proposed

15 schedule. But just let me hear on plaintiff's side, is

16 plaintiff planning to participate at the moment in the

17 compensation fund program?

18          MR. GLASSMAN:  Thank you, Your Honor, this is

19 Robert Glassman.  Yes, so we have not submitted a

20 claim to the fund yet; however, we do plan to at some

21 point participate in it, we just have not submitted

22 anything yet.  And, you know, my understanding --

23          THE COURT:  If you decide -- go ahead, I'm

24 sorry, go ahead and finish.

25          MR. GLASSMAN:  I'm sorry, Your Honor.  Yeah,

1
2   so, you know, my understanding based on, obviously,
3   the terms and conditions of the program, and, you
4   know, through conversations with Mr. Moskowitz, you
5   know, participation in the fund in no way means that,
6   you know, the litigation needs to stop. And so we're
7   not, we're not interested in stopping the litigation
8   because we, quite frankly, just it is so unknown what
9   is going to happen through this program that I think
10  it would be very prejudicial to my client to just put
11  everything on hold while the program result is
12  pending. And then we just have to kind of, if it
13  doesn't turn out appropriately or reasonably, then we
14  just have to kind of start all over and pick up.
15          And, you know, what we're interested in is --
16          THE COURT:  Why would it be, look, I
17  understand that there is no requirement that you seek
18  a stay if you participate in the program, no
19  requirement that the Court stay the case if you decide
20  to participate in the program, but there have been a
21  lot of very able plaintiffs' counsel in these cases,
22  including very, you know, counsel who are very
23  strongly committed to protecting their clients' rights
24  and interests, who have, nonetheless, decided that a
25  stay would make sense, and have weighed the different

1

2 issues and have apparently concluded that a stay would

3 not be unduly prejudicial to their clients.  And the

4 evidence in these cases is all, already several years

5 old, the chances at this point if a litigation is

6 commenced and there's been litigation holds put out

7 there, the chance at this point that there would be,

8 you know, some serious erosion in the quality of the

9 evidence seems unlikely.  There isn't that much more

10 to do in the case, given the deadlines that are being

11 proposed, you're proposing November and it's already

12 August. So it seems to me that if the case is not

13 resolved through the program you can pick up and get

14 it done relatively quickly. And I'm not saying you

15 should agree to a stay, but I think you should

16 consider it and, you know, really be able to explain

17 why it's not in the interest of judgment and judicial

18 economy and all of the rest to put the case on the

19 same sort of track as the other cases, and all of

20 which I've asked for a status report pretty soon to

21 see how it's all going. I think I had August 14 as the

22 date I put on all of the stay orders that I issued

23 saying that I wanted to know and keep tabs on it,

24 wanted to know how it was going by then.

25           So I mean unless you have a particular witness

1
2  who you think is, you know, who might be ill or
3  something like that, or you might lose the testimony
4  of somebody important, or there is some, really some
5  concrete reason why you're concerned about the
6  prejudice that comes from delay, I want to throw it
7  out there, especially when we have this overlay of
8  issues regarding Ms. Maxwell and the pending
9  indictment.  Does it make sense to plow forward if
10 you're going to participate in the program, and
11 obviously anybody who participates in the program is
12 not satisfied with the results and does not accept the
13 settlement, we would put everything back on the
14 calendar pretty quickly and the cases would get
15 wrapped up and ready to go.
16         MR. GLASSMAN:  Yes, Your Honor, my concern is
17 that it has taken so long to just do anything we want
18 to do in this case to date and, you know, if we just,
19 if we put everything on ice for three, four months, or
20 however long it will take for the administrator to
21 consider a package and render a decision, it's just
22 going to just delay it that much more. I mean we, you
23 know, we haven't been able to take a deposition so
24 far. Like I mentioned before, we don't have any
25 evidence or documents from the co-executors. Now we do

22

1

2  have Mr. Indyke's deposition on calendar for August

3  26, hopefully this time that date will stick, so I'm

4  very pleased to see that we're going to start with

5  depositions in the case. But, you know, I just think

6  that like in most cases things really aren't going to

7  pick up until we have a trial date and start working

8  towards that date.  So I just would like to keep

9  moving forward at this point towards that, but I

10  certainly will, I appreciate Your Honor's comments and

11  I certainly will discuss them with my client.

12          THE COURT:  And there is also a motion to

13  dismiss pending which the Court is going to have to

14  spend time and energy to resolve, and a decision may

15  be on the way any moment, it's possible.

16          MR. GLASSMAN:  With respect to the punitive

17  damages?

18          THE COURT:  With respect to counts one through

19  four, one through four to the extent they are time

20  barred, count five in its entirety, and the demand for

21  punitive damages, as I read the notice of motion, no?

22          MR. GLASSMAN:  Right, well, yeah.

23          THE COURT:  That's not just the punitive

24  damages count.

25          MR. GLASSMAN:  No, yeah, I mean I think,

23

 1 | obviously it's the co-executor's motion, but I believe

 2 | what it is, is, you know, counts one through four with

 3 | respect to any allegations after the plaintiffs turned

 4 | 18.

 5 | THE COURT:  Right, I mean there have been

 6 | similar motions in other cases and some judges have

 7 | decided them, and others where cases were stayed have

 8 | held off.

 9 | MR. GLASSMAN:  Yeah, and just so Your Honor

10 | knows, I mean out opposition on that was basically we

11 | kind of submit on it. I mean we agreed to the count

12 | five and, I mean counts one through four for sexual

13 | assault, sexual battery, NIED and IIED, yeah, I mean

14 | anything that happened after she was 18 is not, we

15 | can't recover, you know, for.  So that --

16 | THE COURT:  That issue got taken out of the

17 | case?

18 | MR. GLASSMAN:  I mean that's what we argued in

19 | our, you know, set forth in our opposition.

20 | THE COURT:  I see.  All right, by the way, I

21 | also see on the docket a motion for an attorney to

22 | appear pro hoc vice which is still unresolved. I can

23 | resolve that, I don't think that attorney is on the

24 | phone, but I can grant that motion, I'll take care of

24

1    that.

2          All right, so with respect to, with respect to

3    your timing, go back and talk further, take not more

4    than one week from today's date to write a new letter

5    that's jointly submitted that tells me what the

6    parties' positions are, and let's sort it out now

7    instead of later so that I don't hear squawking down

8    the pike.  Okay, with respect to the computation of

9    damages issue, I gather there is still discontent

10   about the sufficiency of the computation, who wants to

11   address that?

12         MR. MOSKOWITZ:  Your Honor, Bennet Moskowitz

13   here, my colleague, Mary Grace Metcalfe will address

14   that issue.

15         MS. METCALFE:  Thank you.  We don't want to

16   belabor this point which I believe Your Honor

17   addressed in another case at the end of June involving

18   the estate, but plaintiff has today failed to provide

19   a calculation of damages or any supporting document

20   that's required by Rule 26(A)(1)(a).  In our letter we

21   laid out the various responses we have received, none

22   of which are sufficient, and despite raising this with

23   plaintiff's counsel repeatedly over the last several

24   months, the issue still hasn't been resolved.

          THE COURT:  Do I have the actual response or
do I just have the letter that quotes from it?

          MS. METCALFE:  I don't believe we submitted
the actual response, we did quote it in its entirety
throughout the letter though.

          THE COURT:  So I read the blocked in quotes
together?

          MS. METCALFE:  Yes, please, they consist of
the first response, or rather the first disclosure
that we received --

          THE COURT:  And the second blocked in quote in
your letter is the full extent of the second
disclosure?

          MS. METCALFE:  The second blocked in quote is
what was supplemented during the amended disclosures,
the first chunk of the blocked in quote was still
present.

          THE COURT:  Okay, and was there anything
further?  I guess --

          MS. METCALFE:  Your Honor, I'm sorry, in our
interrogatories we requested a calculation of damages
and the content of the first two blocked in quotes
combined is the entirety of plaintiff's responses.
Then during our meet and confer we additionally raised

26

1
2 the issue, it was one of the few issues we were able
3 to discuss, and plaintiff then supplemented her
4 response to this interrogatory with the third blocked
5 in quote which contains the reference to the New York
6 (indiscernible) and jury instructions.
7        MR. GLASSMAN:  Your Honor, I was going to
8 suggest, I have it up here on my screen, I can just
9 read it to you if you want --
10        THE COURT:  I think I have it, unless you
11 disagree that what's in the letter is accurate.
12        MR. GLASSMAN:  Well it was kind of a little
13 piecemeal, the second supplemental response was not
14 set forth kind of like in its entirety continuously in
15 the letter so I don't know if it's going to be clear
16 to Your Honor --
17        THE COURT:  Well let me just ask this.
18        MR. GLASSMAN:  Sure.
19        THE COURT:  If you have different categories
20 of damages that the plaintiff is claiming, then each
21 separate category of damages needs to be separately
22 set out and computed to the best that you are able to
23 do so. There are obviously going to be some types of
24 damages that are not going to be readily susceptible
25 to a mathematical computation and everybody

1                                                            27

2    understands that, you know, pain and suffering is

3    difficult or emotional distress is difficult. But

4    there can be categories of damages that are

5    susceptible of computation and there can be documents

6    that support those computations, and when there is a

7    category that is capable of being computed to the best

8    of your ability at this time, it needs to be under the

9    rule and the documents that support it need to be

10   produced under the rule.

11           So, you know, if you say something like, you

12   know, loss of enjoyment of life, okay, we understand

13   that, or punitive damages, we understand that it may

14   be an uncertain computation.  You can still put down

15   the particular amount that as of now you claim to be

16   seeking as best as you are able. Everybody understands

17   that if there's an expert report later or something

18   and there's a need to supplement responses, they can

19   be supplemented.  You know, the rule provides that if

20   the information is made clear, then, you know, then

21   that can suffice as supplementation.

22           Let me just pull up for a moment the rule

23   here.  Under 26, hold on one moment, 26(E)

24   supplementing disclosures and responses, you must

25   supplement or correct in a timely manner if you learn

1                                                              28

2   that in some material respect the disclosure or

3   response is incomplete or incorrect, and if the

4   additional or corrective information has not otherwise

5   been made known to the other parties during the

6   discovery process or in writing, or as ordered by the

7   Court.  So, you know, if you produce an expert report

8   that makes clear that you have some additional

9   information or corrective information that's made

10  clear during the discovery process, that may work, but

11  that doesn't excuse you from doing the initial

12  disclosures as best as you are able at the outset of

13  the case.

14          And in addition, you've got some categories

15  here that are various expense categories that may well

16  be susceptible to computation, and you may not be able

17  to give, you know, the end amount that it's going to

18  cost at the end of the day, so reasonable attorney's

19  fees incurred in the case by the end of the day, but

20  if you have estimates of, you know, court costs,

21  quote, "other recoverable expenses," you should

22  provide as best of a computation as you can provide.

23  And if there are particular things that factor into

24  plaintiff's damages, I don't know, medical bills, lost

25  employment, if there are particular things, they

should be itemized and you should provide the

documents that support whatever you've got in the

computation. If you really don't have anything,

there's nothing concrete, there are no numbers you can

add, then you have to say, at least in your good faith

conference there are no specifics, there is nothing

that we could add, we do not intend to rely on

anything specific, we just intend to be, you know,

coming up with general damages numbers that we think

sound fair. If that's, I mean you can't invent

documents, you can't invent computations if there is

nothing to calculate or no formula that you can use,

but if there is, you do it to the best of your ability

at the outset of the case and then you supplement it

later if something changes.

        Now what is it on defendants' side that you

think is, needs to be specifically itemized and

computed?  Ms. Metcalfe?

        MS. METCALFE:  Your Honor, I had the phone on

mute for a moment.  We've seen the categories that

plaintiff's counsel has laid out in the first set of

initial disclosures which have been sort of all

grouped together, Your Honor noted the attorney's

fees, the court costs, medical bills and expenses. In

1

2  addition, the second supplement set of disclosures

3  breaks down the calculations, or rather the categories

4  of emotional damage to include past pain and

5  suffering, future pain and suffering, emotional

6  distress, loss of enjoyment of life, and then also

7  there's the amount of punitive damages at issue. In

8  particular, that's one we'd like to address because as

9  noted earlier on the call, the punitive damages are

10  the subject of a currently pending motion to dismiss,

11  and punitive damages such as those sought by

12  plaintiffs in this case have bene consistently

13  dismissed in other actions brought against the estate.

14        So if we could please see a breakdown of each

15  of the categories of damages plaintiffs identified in

16  the various disclosures, supplements and answers to

17  the interrogatories, and then again, the basic

18  documents in support of those categories, for example,

19  while I know plaintiffs can't necessarily give us a

20  concrete number on how much the litigation will cost,

21  I think costs to date is a pretty good indicator and

22  then an estimate of how much more time and effort this

23  will take, that would go I think a long way towards

24  resolving this dispute.

25        THE COURT:  All right, well attorney's fees

are a tough one because they continue to be incurred
as the case goes on and sometimes what's low at the
beginning ramps up and sometimes what's high at the
beginning goes down, and it's hard to extrapolate. And
you know how much you're spending on your end and it
probably gives you some clue as to how costly
litigation is.  But I will say that if you have
separate categories of damages, even if the numbers
that you are using for those are numbers that you just
think are fair, you know, maybe based on other cases
you've looked at and you don't have a means to compute
them mathematically, you can still separate out the
categories.  So you can separate out punitive damages
from actual damages. You can separate out past pain
and suffering from future. You can put different
numbers that then add up to your total and at least
give defendants the idea of, you know, what they're
dealing with in these different categories of damages
that you're asserting. Is there any reason on
plaintiff's side why you cannot do that?

          MR. GLASSMAN:  Well, Your Honor, so to be
perfectly clear, we are not seeking any economic
damages in this case, period. And it's very clear in
our response that we're only seeking pain and

32

1

2   suffering, emotional distress and loss of enjoyment of

3   life. And the cases that have been cited to

4   continuously by the co-executors in support of their,

5   you know, disagreement with this, are cases that

6   involve patent and copyright infringement claims,

7   that's the *Max Impact v. Sherwood Group* case, and also

8   the *Design Strategy v. Davis* case which is a breach of

9   employment agreement and breach of fiduciary duties

10  case.   In those two cases, the ones that they cite,

11  too, noneconomic damages are not being sought, period.

12  Economic damages are being sought, profits, future

13  sales, lost sales, and in some cases injunctive

14  relief.   But neither, in no case that is cited to does

15  a Court ever say that pain and suffering has to be

16  computed in some mathematical way. In fact, the law is

17  that it's inappropriate and improper to do that.

18          So in our response --

19          THE COURT:  Is there any case law that either

20  side has identified that talks about breaking out past

21  pain and suffering and future?

22          MR. GLASSMAN:  You know, I looked, I looked

23  for that, Judge, and I have not seen it. but I will

24  say if, you know, if anyone is going to be satisfied

25  with us breaking out the past and future, I'm happy to

33

do that. I mean the past damages would be from 1994 to
2020, or whenever the trial would be in this case,
right, that's how you calculate the past.  So since I
don't have a trial date, I don't really know exactly
how, what defines the past, but I mean it would be
from 1994 to the trial date, so 26, 27 years of past
pain and suffering, past emotional distress and past
enjoyment of life. And then the future is from the
date of the trial until the end of plaintiff's life.
And obviously there's life expectancy tables that, you
know, I can look at and see what a normal life
expectancy is for a 39, 40 year old woman. We have no
evidence, you know, and I don't think the defense has
any evidence that she is going to have any kind of
shortened life expectancy, she's expected to life a
full life expectancy. So I can put a number on the
future, too, so 2020 or 2021 through the end of her
life will be the future.

        So I'm happy to do that, but I mean we're not
seeking damages for medical bills, we're not seeking
damages for loss of earnings, so, you know, I think in
my most recent supplemental response I can't be any
clearer that we're only seeking noneconomic damages,
we put a number in there what that amount is, and I

34

mean we specifically say what it's based on. We say,

quote, "it's based upon the damages caused by Jeffrey

E. Epstein to plaintiff as a result of his repeated

and malicious acts of sexual abuse, including rape,

committed against plaintiff over the course of several

years while she was a minor as a result of this

repeated and horrific sexual abuse committed by

decedent Epstein on plaintiff.  Plaintiff has suffered

significant and conscious past and future pain and

suffering, emotional distress and loss of enjoyment of

life for which he was aware she lost." And then --

       THE COURT:  Okay, let me interrupt you for a

second.  All right, let me rule in this way.  First,

separate actual damages and punitive damages.  Okay,

but different numbers on those since you're seeking

them in different categories, okay?  That will be

helpful to defendants understanding, if they win on

the punitive damages claim, what that does on the

value of the case and that might be helpful for

settlement purposes.

       MR. GLASSMAN:  Okay.

       THE COURT:  Second, I don't know and cannot

know if this is a situation where the plaintiff has,

based on her allegations, has suffered differently at

35

1  differently points in her life.  In other words,

2  whether she went through a period of extreme turmoil

3  and, you know, managed to get past it and live her

4  life, or whether it has never abated, whether it has

5  worsened, whether it has manifest in different ways in

6  different levels of severity at different points in

7  her life.  So we're talking about a long period of

8  time and it may be that the past and the future are

9  not calculated the same way, it's not a certain amount

10 per year from day one forever.

11         So have a good faith conversation with

12 opposing counsel about the overall picture here,

13 because if you're going to take the position that it's

14 just really been a constant thing and to the extent

15 that it's manifest differently over time, it's of no

16 different value from the time when the events were

17 occurring to the time immediately thereafter, to the

18 time 10 years later or 20 years later or what may be

19 30 or 40 years later, then let counsel understand

20 that. And then I'm not going to require you to break

21 it out by saying, fine, we'll just divide it by number

22 of years of life expectancy and there you can have a

23 calculation.

24         If, on the other hand, it is a situation where

36

things may be different past and future, then I'm
going to ask you, you know, to discuss it so that
defendants' counsel can have an understanding of what
you're claiming and to see if it might make sense to
at least break it out by past and future.  It kind of
depends upon what the claim is, I'll let you confer on
your own part first instead of, you know, stating it
now, and have a conversation with defendants' counsel.

        If you are not claiming anything like medical
expenses or anything, fine, it's not an element and
doesn't have to be broken out and so on.  I'm not
going to require a breakout now of legal expenses, it
seems a little bit silly because they are ongoing and
they're going to just keep changing over time.  And I
think that attorney's fees applications can be made at
the end of the case and everybody understands that.
Court costs, everybody understands, I don't think it
has to be broken out and it's going to be a drop in
the bucket anyway.  And expert fees, you haven't even
hired your experts yet, I assume where if you have
they haven't even incurred the full cost yet, and
they're going to have to disclose what they're paid
anyhow in connection with their reports and so that
will come out that way.

37

          If there are no other actual damages other
than the sort of general pain and suffering type
damages, then we're going to leave it at that, and on
defendants' side that's going to be the ruling, we're going
to leave it at what I just said, all right?

          MR. GLASSMAN:  Thank you, Your Honor.

          MS. METCALFE:  Thank you very much, Your
Honor.

          THE COURT:  Okay, now moving onto the question
of documents from the estate and the protective order
issue, talk further, bring it to a head, put it in
writing to me if you still have an issue that you
can't work out. I think defendants' point is well
taken that plaintiff ought to want a protective order
because plaintiff has confidentiality concerns
regarding even her identify and I would imagine
something like her medical records, and she's
entitled, excuse me, to have some confidentiality on
her very personal information. It can be used in the
context of this case and, you know, should not
otherwise be out there. There's no reason for, you
know, for a minor's personal history of trauma to be
not afforded some measure of confidentiality
protection. But talk about it, if you really have an

1                                                          38

2  issue about a protective order and you think in some

3  way it is overbroad, talk about it, bring it to my

4  attention, I'll rule on it and we'll get an order in

5  place that makes sense and that can be supported by

6  the Court with the understanding that documents are

7  presumptively public unless there is a reason to

8  protect them.  And if you show me a good reason, I'll

9  protect them, and if you don't, I won't.

10          In terms of the production of documents, I'm

11  assuming once the protective order issue is resolved,

12  documents will be produced forthwith and you'll be

13  able to work that out. I don't want undue delay but I

14  also have some concerns about, as I said, the

15  discovery as to Maxwell. I have some concerns about

16  when this case can be tried anyway because we're set

17  back on trials because of Covid, and I think you

18  should not, on plaintiff's side, not be concerned it's

19  moving too slowly. If the protective order is in place

20  and you're still not getting documents, you'll put it

21  all in writing to me and I will rule and try to make

22  sure things move along appropriately.

23          MR. GLASSMAN:  Thank you, Your Honor, just two

24  quick points. So number one, you know, part of the

25  issue with the protective order is we were waiting for

1                                                           39

2   Ms. Maxwell's thoughts on whether or not she thought

3   it would be appropriate to have a protective order in

4   this case. Ms. Menninger has said she would think

5   about it and let us know, and we have not kind of

6   gotten her input on that issue yet so I think that's

7   part of the holdup.  And number two, you know,

8   presumably the co-executors of the estate do not have

9   medical records of the plaintiffs in their possession,

10  custody and control. In fact, to the contrary, it's my

11  understanding, based on prior conversations, that they

12  do have some documents with my client's name on them.

13  They're not medical records, they are just simply

14  documents that were, you know, found through the

15  course of their, you know, their investigation and

16  discovery of their client. And I don't know why, I

17  mean I just, after reading the --

18          THE COURT:  Well hang on a second, hang on a

19  second, is the issue, let me hear from defendant's

20  side, is the issue about the protective order the fact

21  that the documents have plaintiff's name on them or is

22  there some other issue?

23          MR. MOSKOWITZ:  Your Honor, Bennet Moskowitz,

24  that's one issue, but if I take a step back I'm just,

25  again, scratching my head that something that has been

40

1  a nonissue in over a dozen other cases against the

2  estate is an issue here. The broader issue is,

3  especially given Ms. Maxwell's role as a defendant

4  here, and if Your Honor has seen any of the coverage

5  of or otherwise knows anything about what's been going

6  on in other litigation involving Ms. Maxwell, we want

7  nothing to do with on the estate side any

8  confidentiality issues. Whether it's something that

9  seems innocuous to us that Maxwell, or this plaintiff,

10  or someone else will claim shouldn't have been out

11  there or should have been protected, there have been

12  many very public problems in that regard, not having

13  to do with us, but in the greater world of Epstein

14  related litigation.  And it just stands to reason that

15  we would do what we did in every other case, know what

16  the rules are for designating things confidential and

17  if and when we identify any of those things to produce

18  we will treat them in accordance with that agreement

19  so that there is certainty and so that we are not then

20  spending money and time on something that could have

21  been avoided had we just simply entered into this,

22  again, this pretty standard agreement at this point.

23        THE COURT:  What on plaintiff's side are the

24  problems with the proposed agreement?

41

1

2          MR. GLASSMAN:  Well, so number one, there's

3    been no showing by the estate that the documents they

4    have contain confidential information, number one.

5          THE COURT:  Well hold on a second, for

6    starters, you, yourself, said that they have

7    identified documents that have your client's name.

8          MR. GLASSMAN:  Correct.

9          THE COURT:  You've asked to proceed in this

10   case anonymously. Presumably you want some protection

11   for documents that have your client's name.

12         MR. GLASSMAN:  Well but, Your Honor, so

13   production of documents in discovery are not public

14   documents, right, I mean --

15         THE COURT:  No, production of documents in

16   discovery are not public documents, but if you don't

17   have a protective order, anyone with those documents

18   is entitled to share them outside the litigation.

19   Whereas if you have a protective order in place, it

20   limits parties' ability to share those documents in

21   other cases, for other purposes and with the public as

22   a whole.  So but your client, to be protected in terms

23   of her identity, you would presumably want an order

24   that would bind other parties from revealing documents

25   with her name on them.  Not that the estate is about

1

2  to do that, but you would presumably want assurance

3  that a Court would have said, no, don't do that, not

4  for this moment in time, right, why would you not want

5  that?

6          MR. GLASSMAN:  Well I'm operating on the

7  assumption that neither the estate nor Ms. Maxwell,

8  well the estate already has the documents, obviously,

9  and they haven't, to my knowledge, just publicly

10 disseminated them so far because that would be

11 inappropriate and I don't expect them to do that. I

12 wouldn't expect them to do that in the future.  Just

13 because they have my client's name on them, again, I

14 think putting a confidentiality order in a case is

15 something that is done when there is extremely

16 sensitive confidential proprietary information that if

17 it got out would harm a party. And here, just because

18 this is a high profile case, doesn't mean that --

19          THE COURT:  So you want to provide releases

20 for your client's medical records and you want

21 defendant to be able to get those medical records, and

22 you don't care about having a confidentiality order in

23 place, even if it's documents being produced by a

24 third party or by you?

25          MR. GLASSMAN:  Well I've already produced,

1

2  I've produced documents to the executors already,

3  about 200 pages of them --

4        THE COURT:  And you don't want a protective

5  order for the documents that you produced, you are

6  trusting and don't care about any assurance of

7  protection for your client's personal information?

8        MR. GLASSMAN:  No, it's not about not

9  trusting, it's about the standards for a protective

10  order and a nondisclosure agreement are pretty high.

11  And I don't see any proprietary or commercially

12  sensitive information that has any bearing,

13  whatsoever, in this case.  I mean I think that --

14        THE COURT:  You don't think your client's, any

15  treatment she may have had for emotional distress or

16  pain and suffering, you don't think, or loss of

17  enjoyment of life, you don't think any of that

18  warrants confidentiality protection?  I understand

19  you're saying that those are not documents currently

20  in defendants' hands, but you're providing documents

21  to them of that nature and you might assume that

22  they're not to show anyone. But you don't think that

23  that would constitute the kind of material that is

24  appropriately protected by the Court?

25        MR. GLASSMAN:  Your Honor, I really don't. So,

44

1

2    I mean, unlike perhaps other, you know, like kind of

3    cases that the lawyers for the estate work on, I mean

4    all my cases involve medical issues and medical

5    records. And there are not protective orders put in

6    place just because a defendant gets a HIPAA release

7    for a medical record, or a plaintiff and then gets

8    those records and can share them with their experts

9    for litigation purposes.

10          THE COURT:  So let me ask the estate this, are

11   there any confidentiality issues that you can think of

12   that do not relate to plaintiff's information,

13   plaintiff's identity, plaintiff's personal

14   information, is there anything else that you think

15   ought to be given confidentiality protection?

16          MR. MOSKOWITZ:  Yes, Your Honor, Bennet

17   Moskowitz here.  (indiscernible) all the other orders

18   that were entered in the others actions, including,

19   for example, without conceding that they're relevant

20   here but certainly they're things that plaintiff has

21   asked for in requests that we object to, financial

22   information that is not public, information about

23   other nonparties to the extent they come up in

24   documents. What about deposition testimony?  You can't

25   just, plaintiff said they're kind of assuming that

45

1

2  there's this group of documents and this group, let's

3  talk about them now, no, this is for planning for the

4  unknown, of all the fraud issues that will come up in

5  this case, and that have already come up in this case.

6  You have one defendant who's been indicted. I'm kind

7  of concerned here that I don't hear what the prejudice

8  is to plaintiff of something that would --

9          THE COURT:  Okay, well look, look, hold on a

10  second, if there has been a protective order entered

11  in another case involving personal information

12  regarding other plaintiffs, we're not going to get

13  around that by having documents in this case produced

14  that mention these other plaintiffs who claim to be

15  victims of Mr. Epstein, and have not protected because

16  they've bene produced in this case. Similarly, if this

17  plaintiff were to testify about knowledge about

18  someone else she knew, even if not a plaintiff in

19  another case, but somebody else who was potentially a

20  victim, I think it is entirely appropriate to protect

21  the identities of victims and information about the

22  circumstances, personal information about the

23  circumstances of other victims, especially if they

24  were minors, so there's that. Even if this plaintiff

25  through counsel doesn't think that her own information

46

1   needs to be protected, I'm not going to gloss over the

2   fact that there may be information that's produced or

3   that comes out in testimony regarding other claimed

4   victims. And to me, the quintessential information

5   that is appropriate to protect is highly sensitive

6   personal information such as information about sexual

7   abuse of a minor. That is highly personal and, you

8   know, unless there is further consideration by the

9   Court about why it should be released, in the first

10  instance that's appropriate to keep for use in the

11  case and not to share widely.

12  Second, financial information, I don't know,

13  whose financial information are we talking about? What

14  kind of financial information are we talking about?

15  You know, that warrants some discussion. But you could

16  have a protective order that has a provision in it and

17  once documents are produced, if somebody wants to use

18  them for purposes other than the case or thinks that

19  the designation was really overbroad or improper, you

20  can come back to the Court and I can take a look at it

21  and I can determine whether it really is appropriate

22  or not for protection.  You know, Mr. Epstein had a

23  certain amount of wealth, that's not contested, I'm

24  sure, information about his finances may not be the

47

1

2  sort of thing that is appropriate for protection at

3  this point.  But there may be other kinds of

4  information that's not public, I don't know what

5  you're talking about.  But you should talk through

6  these things and I think it makes sense to have a

7  protective order in this case that covers at least

8  certain categories of information, and I don't see why

9  you shouldn't be able to discuss those categories and

10 come up with something sensible and have a provision

11 in there that says that you can return to the Court if

12 you think a designation was overbroad.

13          I do not sign protective orders unless they

14 have some specificity. I will not sign an order that

15 says we can keep confidential anything we think is

16 confidential, that's not acceptable. The public has to

17 understand what the rationale is for having something

18 kept confidential, so it has to be spelled out what

19 the category is so that you can see on its face what

20 it is that the Court has decided to afford protection

21 to.  So nothing vague.  But I don't think that it's

22 appropriate to have no protections in a case that

23 involves one and potentially more through discovery

24 claimed minor victims of sexual abuse. I mean if

25 that's not highly personal, I don't know what is.

1

2          I'm going to send you back to the well. Again,

3   I'm going to send you back to talk.  As far as Ms.

4   Maxwell is concerned, counsel, be part of the

5   conversation.  Okay, I know there is some stuff going

6   on about testimony that Ms. Maxwell has given

7   elsewhere and whether it should be public or not, and

8   I know that's currently in the courts and being

9   discussed and, you know, there may be some precedent

10  that's relevant, and we'll take it all into account.

11  But you should be in discussions, in an initial

12  discussion phase of what sort of protection order, if

13  any, should be issued by the Court, okay. And on

14  plaintiff's side, if this is what's slowing down

15  production of documents, then let's get the issue

16  about the protective order teed up quickly and I'll

17  try to resolve it as quickly as I can so that the

18  production can follow.

19          MR. GLASSMAN:  Okay, Your Honor, thank you,

20  thank you, it's still not seen on the issue of

21  documents how, you know, the estate is trying to act

22  like they're protecting my client's privacy here, I

23  mean --

24          THE COURT:  That's not what I'm hearing.  What

25  I'm hearing is that the estate wants some certainty as

49

to what it can and can't do to avoid issues later and

to avoid charges later that they improperly disclosed

something or didn't keep something confidential.

          MR. GLASSMAN:  But we can't litigate in

secret, this is a public case in a public forum and I

just feel like every time we talk about this, I get

the statement that, well, every other case has decided

--

          THE COURT:  Okay, for defendants' benefit, I

don't care about every other case, I care about this case.

I do care that information relevant to other cases may

possibly come out through this witness or through the

documents that defendants have.  If, for example, there's

a document that list three names, one might be your

client, you may not care if your client's name is

public, even though you wanted to proceed anonymously,

but the other two may care, and the other two may have

good reason for caring. And the defendant is right to

question whether there should be some protection so it

knows what the ground rules are. Right, let's put the

ground rules in place. And if your view is there

should be no ground rules and everything should be

fair game, then I'll allow defendant to make its own

application for a protective order, I'll hear your

50

argument as to which provisions are or are not

appropriate and I'll decide what provisions should or

should not be in place. But I'm inclined to issue an

order that allows at least some protection for

identities and highly personal information regarding

alleged victims.

            MR. GLASSMAN:  Okay, so we can go back, as you

said, to the well and probably narrowly tailor that

this --

            THE COURT:  You can narrowly tailor it, if you

have a dispute about certain categories of

information, Mr. Moskowitz mentioned financial,

nonpublic financial information, you can talk about

what that means, what would be covered by that

category, what kind of financial information of whom

are we talking about.  If you cannot reach agreement

on that, you let me know what the issue is and I'll

decide it.  Okay, Mr. Moskowitz, I am more concerned

about personal information of minor victims than I am

about financial information but I don't really know

what you're talking about. It's not a trade secrets

kind of case, it's not, you know, a case where

somebody has a customer list that somebody else might

steal, right, so be cautious about what it is, and I'm

51

not going to entertain the argument of, well,
everybody else agreed so you should, too. This case is
its own case, and bringing me back to what I was
saying before, it seems to be the only one that is
going full force which should lead to another
conversation.  Not trying to twist anybody's arms
here, I just think you need to talk because I don't
want to see money unnecessarily spent if you're going
to decide a month from now that maybe the case should
be stayed. Figure it out now, figure it out, figure
out whether it should be stayed in its entirety
because the plaintiff wants to participate in a
program, figure out whether it should be stayed in
part as to defendant Maxwell or not, and if in part,
what part.  You know, figure out now, try to figure
out now the scope of an order so that, a protective
order so that everybody has clear guidance on
production of documents on both sides and knows what
they can and can't do.  And so that the public and the
press knows what they can and can't get their hands on
for the asking.  And bear in mind that this discovery
material, yes, it's exchanged between you, but it may
well be provided to the Court in connection with a
motion. And if so, and if the Court relies on it and

1

2   it becomes a judicial document, some of those

3   presumptions of confidentiality are going to disappear

4   anyway because the public is entitled to know what the

5   basis was for the Court's decision. So think about the

6   whole ball of wax when you're talking and, you know,

7   think about a protective order that maybe lays it out

8   a little bit more clearly than some other ones that

9   you've negotiated if you feel the need.

10          All right, go back and talk some more. I'm

11  going to grant the motion for pro hoc vice counsel,

12  that's easy.  I'm going to approve the scheduling

13  order that's been proposed as to the August dates and

14  then ask you within a week to send me a joint letter,

15  all counsel, as to whether you're in agreement as to

16  what should happen with regard to the close of fact

17  discovery and expert discovery or not. If you're not,

18  tell me where the disagreement lies, if I need to have

19  another conference I will. On the computation of

20  damages, to summarize, break out punitive and talk

21  with your client about the question of whether other

22  damages were consistent over time or not. If not, try

23  to break it out in a way that makes sense. If so, if

24  it's consistent over time, I'm not going to require

25  it.  I'm not going to require breaking out attorney's

53

1   fees and the like with separate amounts.  And on

2   document production, if you end up slowed down even

3   after this protective order, then you come to me with

4   an informal motion to compel and I'll try to get on it

5   and try to get you moving, okay?

6           MR. GLASSMAN:  Thank you, Judge.

7           THE COURT:  Got all that?

8           MR. GLASSMAN:  Yes.

9           THE COURT:  All right, everybody, carry on.

10  Be well.  Hope you get your power back soon.

11          MR. MOSKOWITZ:  Thank you, Your Honor.

12          MR. GLASSMAN:  Thank you.

13              (Whereupon the matter is adjourned.)

14

15

16

17

18

19

20

21

22

23

24

25

54

C E R T I F I C A T E

         I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, Jane Doe versus

Indyke, et al., docket #20cv484, was prepared using PC-based

transcription software and is a true and accurate record of

the proceedings.




Signature  *Carole Ludwig*

                 Carole Ludwig

Date:  August 12, 2020