UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>                                        Plaintiff,<br><br>                -against-<br><br>DARREN K. INDYKE, et al.,<br><br>                                        Defendants. | 20cv00484 (JGK) (DF)<br><br>**MEMORANDUM<br>AND ORDER** |

**DEBRA FREEMAN, United States Magistrate Judge:**

This civil action, in which plaintiff Jane Doe ("Plaintiff") has sued defendants

Darren K. Indyke and Richard D. Kahn, in their capacities as executors of the estate of

Jeffrey E. Epstein ("Epstein") (the "Co-Executors"), as well as defendant Ghislaine Maxwell

("Maxwell"), individually (collectively, "Defendants"), for alleged sexual abuse and exploitation

when Plaintiff was a minor, has been referred to this Court by the Honorable John G. Koeltl,

U.S.D.J., for general pretrial supervision.  Currently before this Court is a letter motion filed by

defendant Maxwell, seeking a stay of these proceedings pending the resolution of the criminal

proceedings against her.  (Letter to the Court from Laura A. Menninger, Esq., dated Aug. 19,

2020 ("8/19/20 Menninger Ltr.") (Dkt. 69).)  For the reasons discussed below, Maxwell's motion

for a stay is granted, and these proceedings shall be stayed in their entirety, pending further order

of the Court.

## <u>BACKGROUND</u>

Maxwell has been indicted by a grand jury in this District, and she is now being held in

custody at the Metropolitan Detention Center ("MDC") as she awaits her criminal trial, which is

set to begin on July 12, 2021, before the Honorable Alison J. Nathan, U.S.D.J.  (*See id.*, at 2; *see

generally United States v. Ghislaine Maxwell*, No. 20cr330 (AJN) (S.D.N.Y.).)  On August 19,

2020, Maxwell filed the letter motion that is now before this Court, requesting a stay of this action until the conclusion of her pending criminal case.  (*See* 8/19/20 Menninger Ltr.)  In her motion, Maxwell set out the factors relevant to a stay analysis, and argued that not only her own interest, but also the interests of the courts, the public, and the other parties would be best served by the requested stay.  (*See generally id*.)

On August 27, 2020, the Co-Executors submitted a letter consenting to the entry of a stay and joining in Maxwell's request that the stay apply to the entire proceeding.  (*See* Letter to the Court from Bennet J. Moskowitz, Esq., dated Aug. 27, 2020 ("8/27/20 Moskowitz Ltr.") (Dkt. 77).)  The Co-Executors principally argued that this Court should not consider a partial stay of this case (*i.e.*, a stay that would apply solely as to Plaintiff's claims against Maxwell), as a partial stay would unduly prejudice the Co-Executors' ability to defend against Plaintiff's claims and would add unnecessary cost to the litigation.  (*See id*., at 1-2.)  The Co-Executors also pointed out that, if this matter were stayed, Plaintiff would still be able to pursue a resolution of her claims through the Epstein Victims' Compensation Program (the "Compensation Program") that has been independently instituted, and that has led numerous other plaintiffs in similar cases before the Court to seek voluntary stays of their lawsuits.  (*See id.*, at 2-3.)

By letter dated August 27, 2020, Plaintiff vigorously opposed the requested stay, arguing that the relevant factors weigh against granting the requested relief.  (*See generally* Letter to the Court from Robert Glassman, Esq., dated Aug. 27, 2020 ("8/27/20 Glassman Ltr.") (Dkt. 78).)  In her opposition, Plaintiff contended, *inter alia*, that Maxwell's detention should pose no real impediment to her defense of this action, suggesting that Maxwell, who filed her motion for a stay only after she had first sought discovery from Plaintiff in this case, "appear[ed] to want to gain an unfair advantage by acquiring as much information as she [could] about Plaintiff without

2

having to divulge anything about herself or the bad conduct she is alleged to have committed."
(*Id.*, at 1; *see also id.*, at 4-5 (arguing that Maxwell had already demonstrated her ability to
participate actively in this action from jail).)  Plaintiff also noted that, under the terms of the
Compensation Program, she is not required to agree to a stay of her lawsuit in order to participate
in that program.  (*Id.*, at 2.)  As for the prejudice that Plaintiff would purportedly suffer from a
stay of these proceedings, Plaintiff asserted that, "[f]or too long[,] Jeffrey Epstein and
Ghislaine Maxwell skirted the consequences of their vile acts," and that she should not have to
wait "even longer for justice."  (*Id.*, at 4.)

Maxwell filed a reply on September 4, 2020 (*see* Letter to the Court from Laura A.
Menninger, Esq., dated Sept. 4, 2020 ("9/4/20 Menninger Reply Ltr.") (Dkt. 79)), contending
that Plaintiff had not adequately demonstrated how the requested stay would harm her interests,
and taking issue with Plaintiff's assertions that Maxwell could reasonably litigate this case from
the MDC (*see id.*).

On September 4, 2020, this Court additionally received a letter from Acting United States
Attorney Audrey Strauss, on behalf of the Government, requesting leave to intervene in this
matter for the limited purpose of – like Maxwell – seeking a stay of this case, in its entirety,
pending the resolution of the Government's criminal prosecution against Maxwell.  (*See* Letter to
the Court from Audrey Strauss, Acting United States Attorney, by Maurene Comey, Alison Moe,
and Lara Pomerantz, Assistant United States Attorneys, dated Sept. 4, 2020 ("9/4/20 Gov't Ltr.")
(Dkt. 80).)  In its letter, the Government urged this Court to stay this action on the grounds that
"a complete stay of this civil action [would] serve the public interest of preserving the integrity
of the criminal prosecution against Maxwell and [would] conserve private, public, and judicial

resources; and that those interests [would] outweigh any delay or disruption caused to the resolution of this civil action." (*Id.*, at 1.)

## DISCUSSION

## I.     THE GOVERNMENT'S REQUEST FOR INTERVENTION

The Government is not a party to this civil action against Maxwell, and therefore does not have standing to move for a stay of this action. Thus, for the limited purpose of seeking a stay, the Government has sought leave to intervene in the action. (*See* 9/4/20 Gov't Ltr., at 1.) This Court finds it unnecessary, however, to deal with the Government's letter in an "intervention" framework, which would require an inquiry as to whether the Government meets the standards set out in Rule 24 of the Federal Rules of Civil Procedure. Rather, given that a motion for a stay has already been made by Maxwell, this Court finds it appropriate, in connection with that motion and in the exercise of its discretion, to treat the Government's submission as that of an *amicus curiae*. *See, e.g.*, *South Carolina v. North Carolina*, 558 U.S. 256, 288 (2010) (Roberts, C.J., concurring in part) ("Courts often treat *amicus* participation as an alternative to intervention."); *Washington State Inv. Bd. v. Odebrecht S.A.*, No. 17cv8118 (PGG), 2018 WL 6253877, at *10 n.2 (S.D.N.Y. Sept. 21, 2018) (considering company's submission contesting alternative service on chief executive officer as *amicus* filing); *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012) (same); *see also Brenner v. Scott*, 298 F.R.D. 689 (N.D. Fla. 2014) (not allowing organization that opposed same-sex marriage to intervene in Plaintiffs' actions challenging Florida's constitutional and statutory provisions banning same-sex marriage, but allowing the organization to be heard as *amicus*). On this basis, this Court has fully considered the views expressed by the Government in its letter.

II.     **MAXWELL'S MOTION FOR A STAY**

A.     **Applicable Legal Standards**

Although staying a civil action pending the completion of a criminal prosecution against

a named defendant has been characterized as an "extraordinary remedy," *Louis Vuitton Malletier*

*S.A. v. LY USA, Inc.*, 676 F.3d 83, 98 (2d Cir. 2012), "courts will not hesitate to grant a stay

'when the interests of justice seem to require' it," *Sec. & Exch. Comm'n v. LaGuardia*,

435 F. Supp. 3d 616, 621 (S.D.N.Y. 2020) (citing *In re Worldcom, Inc. Securities Litigation*,

No. 02cv3288 (DLC), 2002 WL 31729501, at *3 (S.D.N.Y. Dec. 5, 2002)) (granting a stay where

there was overlap of issues in the civil and criminal cases and explaining that overlap of issues is

a particularly significant factor); *see also Trustees of Plumbers & Pipefitters Nat. Pension*

*Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134 (S.D.N.Y. 1995) (same); *Volmar Distributors,*

*Inc. v. New York Post Co.*, 152 F.R.D. 36, 42 (S.D.N.Y. 1993) (staying civil discovery pending

completion of the criminal case against the defendant); *Sec. & Exch. Comm'n v. Shkreli*,

No. 15-CV-7175 (KAM) (RML), 2016 WL 1122029, at *7 (E.D.N.Y. Mar. 2, 2016) (same).

Ultimately, the decision as to whether to issue such a stay rests in the discretion of the

district court, *Louis Vuitton Malletier*, 676 F.3d at 99, and each case requires a particularized

inquiry, *see id.*, at 98.  In determining whether a civil action should be stayed in the face of a

parallel criminal proceeding, courts in this District have generally been guided by six factors:

(1) the extent to which the issues in the criminal case overlap with those presented in the civil

case; (2) the status of the criminal case, including whether the defendant has been indicted;

(3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice

to the plaintiff caused by the delay; (4) the private interests of and burden on the defendant;

(5) the interests of the court(s); and (6) the public interest.  *See id.*; *see also, e.g., Trustees of*

*Plumbers and Pipefitters Nat. Pension Fund*, 886 F. Supp. at 1139.  The party seeking the stay "bears the burden of establishing its need," *Louis Vuitton Malletier*, 676 F.3d at 97 (internal quotation marks and citation omitted), and this burden may be met where, on balance, the relevant factors suggest that proceeding with the civil action will likely result in undue prejudice to the defendant, *see id.* (noting that "absent a showing of undue prejudice . . . there is no reason why [a] plaintiff should be delayed in its efforts to diligently proceed to sustain its claim" (internal quotation marks, alteration, and citation omitted)).

**B.**    **The Relevant Factors Weigh in Favor of Granting a Stay of This Action.**

In this instance, as discussed below, the relevant factors support Maxell's application for a stay.

**1.**    **Overlap Between the Civil and Criminal Cases**

"The strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the *same matter*." *Volmar Distributors*, 152 F.R.D. at 39 (emphasis added) (citations omitted); *accord In re Worldcom,* 2002 WL 31729501, at *5.  Denying a stay where there is significant factual overlap between the civil and criminal cases may "undermine a defendant's Fifth Amendment privilege against self-incrimination . . . expand the rights of criminal discovery beyond the limits of Rule 16(b) of the Federal Rules of Criminal Procedure, expose the basis of the defense to the prosecution in advance of trial, or otherwise prejudice the case." *Volmar Distributors*, 152 F.R.D. at 39 (citations omitted); *see also Johnson v. New York City Police Dep't*, No. 01cv6570 (RCC) (JCF), 2003 WL 21664882, at *2 (S.D.N.Y. July 16, 2003).

As a threshold matter, this Court finds that, in this instance, there is significant factual overlap between this civil case and the pending criminal case.  For example, as Maxwell points

out, both the Indictment in the criminal case and the Complaint in this action contain allegations that Maxwell "groomed" minor victims by taking them to the movies or shopping, that Epstein paid for victims' education, and that Maxwell facilitated Epstein's abusive conduct.  (*See* 8/19/20 Menninger Ltr., at 3 (summarizing certain allegations made in both actions and noting that particular allegations in the Indictment "are very similar in time frame and content to those in the Complaint").)  The Government, in its submission, has confirmed that the allegations pleaded in this case will necessarily "touch on matters relating to the pending Indictment" (9/4/20 Gov't Ltr., at 2), and has also noted that "given the factual overlap between the civil and criminal cases, allowing the criminal matter to be resolved in the first instance may result in a narrowing of the factual and legal issues before this Court" (*id.*, at 3).  Plaintiff, in her opposition, does not contest that there is substantial overlap between the cases, in terms of the people involved, the relevant evidence, or the facts sought to be established.  (*See generally* 8/27/20 Glassman Ltr.)  Thus, this factor weighs in favor of granting a stay.

### 2.    Status of the Criminal Case

The arguments favoring a stay are also stronger where the criminal case is not merely hypothetical or anticipated, but rather is actively proceeding.  In fact, as Maxwell notes, "'[w]hether the defendant has been indicted has been described as "the most important factor" to be considered in the balance of factors.'"  (8/19/20 Menninger Ltr., at 4 (quoting *Maldanado v. City of New York*, No. 17cv6618 (AJN), 2018 WL 2561026, at *2 (S.D.N.Y. June 1, 2018)); *see also In re Par Pharmaceutical, Inc. Sec. Litig.*, 133 F.R.D. 12, 13-14 (S.D.N.Y. 1990) (noting that "[t]he weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment" (collecting cases).)

Here, Maxwell was indicted by a grand jury on June 29, 2020; she has been detained pending her criminal trial; and her trial date has been set.  (8/19/20 Menninger Ltr., at 2.)  Should discovery in the civil action proceed, Maxwell would be forced to decide whether to defend herself by making pretrial disclosures and giving deposition testimony (which could be used against her in the criminal case) or to invoke her Fifth Amendment privilege against self-incrimination (which would protect her in the criminal case, but which could well result in an adverse inference being drawn against her in the civil case).  (*See id.*, at 4; *see also Louis Vuitton Malletier*, 676 F.3d at 97-98 (discussing the burdens to the Fifth Amendment privilege that may be posed by parallel proceedings).)  This legitimate concern, made more real and immediate by the active posture of criminal case, militates in favor of a stay.

### 3.    The Interests of the Plaintiff

Plaintiff asserts that staying this proceeding would harm her interests because, as she is suffering "ongoing damaging effects" from the alleged abuse, and she should not have to wait any longer to hold Defendants accountable.  (8/27/20 Glassman Ltr., at 4.)  While, as a general matter, plaintiffs have a strong interest in the expeditious resolution of their civil claims, *see Volmar Distributors*, 152 F.R.D. at 40, Plaintiff here has not advanced any particularized reason why a delay would cause her prejudice, such as a likely loss of physical evidence or witness testimony during the period of a stay.  (*See* 8/19/20 Menninger Ltr., at 1 (noting that "there is little chance that any evidence will be lost in the interim given the age of the accusations in this case"); *see also id.*, at 4.)

Additionally, although this Court is not suggesting that Plaintiff has any obligation to agree to a stay so as to pursue her claims through the Compensation Program (and, in fact, recognizes that she does not), this Court does note that a stay would not entirely hinder Plaintiff

in her ability to seek redress for the sexual assaults and other tortious conduct on which her claims are based, as, during the pendency of any stay, she would still be able to participate in that program.

Overall, and despite Plaintiff's assertion that a stay would work to her disadvantage, this Court finds that any generalized prejudice that she would suffer as the result of a stay is not sufficient to counterbalance the other factors that the Court should consider, which all heavily favor a stay.

### 4.   The Interests of the Defendant

The private interests of Maxwell, and the burden that she would face in proceeding with discovery in the civil action at this time are significant.  As already noted, if civil discovery were to proceed, Maxwell would have to make the difficult decision of whether to assert her Fifth Amendment privilege – a decision that could adversely impact her position in one or the other of the cases she is defending.  *See Louis Vuitton*, 676 F.3d at 97.  Also, due to heightened restrictions at the MDC during the COVID-19 pandemic (restrictions of which this Court takes judicial notice), this Court understands that counsel has had difficulty, and will likely continue to have difficulty, meeting with Maxwell and arranging for her to review documents or otherwise to confer for the purpose of preparing a defense to this civil case.  (*See* 8/19/20 Menninger Ltr., at 5; *see also* 9/4/20 Menninger Reply Ltr., at 2-3.)

This Court finds that not only the existence of the criminal prosecution against Maxwell, but also the particularly (and unusually) restrictive circumstances of her current detention, would necessarily make it harder for Maxwell to participate fully in the discovery process in this action, and would cause her undue prejudice, weighing strongly in favor of a stay.

### 5.     __The Interests of the Court__

As for the interest of the Court, it appears that staying discovery in the civil case could conserve judicial resources.  Where a criminal case can potentially streamline the related civil case, this factor supports a stay.  *Sec. & Exch. Comm'n v. Abraaj Inv. Mgmt. Ltd.*, No. 19cv3244 (AJN), 2019 WL 6498282, at *3 (S.D.N.Y. Dec. 3, 2019).  As observed by the Government, the pending criminal case against Maxwell may resolve issues of fact common to the two actions, and may therefore reduce the number of issues to be decided in subsequent proceedings in this case.  (*See* 9/4/20 Gov't Ltr., at 2.)

Further, although it should not be the decisive factor, this Court also notes that it has some interest in coordinating discovery, where appropriate, among the many civil cases that have been brought in this District against the Epstein estate, and that none of those other cases are currently going forward.  This Court additionally notes that tighter restrictions on discovery may be imposed in the context of a criminal prosecution than in a civil litigation, and that, if this civil case were to move forward, restrictions that have already been placed on Maxwell's access to information in her criminal case could have a limiting effect on this Court's ability to supervise discovery here.  (*See* 9/4/20 Gov't Ltr., at 3-4 (noting that "Maxwell's access to information about the criminal matter is under the jurisdiction of the Honorable Alison J. Nathan, who has entered a protective order and has issued several rulings regarding the scope of discovery that Maxwell is entitled to and the manner in which she may or may not use that information"); *see also* 8/27/20 Moskowitz Ltr., at 3 (noting that Maxwell had indicated, in her initial disclosures, that, due to the terms of a protective order entered in the criminal case, she would be prohibited from disclosing certain information in the civil case).)

Thus, at least to some extent, the Court's interest weighs in favor of a stay.

6.      **The Public Interest**

Plaintiff argues that the public interest is best served by allowing her claims to proceed. (8/27/20 Glassman Ltr., at 5.)  Specifically, she contends that the public benefits from civil litigation when that litigation furnishes the public with information on the torts and crimes of a wrongdoer.  (*Id.*)  Plaintiff further contends that, as her lawsuit is the only civil case currently being litigated against Maxwell (as any others have been stayed or dismissed), "the continuation of this last remaining civil avenue can furnish the public with critical information as to defendant Maxwell's well known criminal enterprise, how it was operated and all those involved."  (*Id.*)  It is a mischaracterization of this action, however, to call it the "last remaining civil avenue" for addressing Maxwell's alleged misconduct, as, to the extent other civil litigation against Maxwell has been stayed, it has not been terminated – just as this action, if stayed, would not be ended. Moreover, as the Government argues, the public interest is also served by protecting the integrity of criminal proceedings.  (*See generally* 9/4/20 Gov't Ltr.)  Should civil discovery proceed, there is a risk that the criminal prosecution could be impaired by the premature disclosure of the testimony of various witnesses or could otherwise be prejudiced.  (*See id.*, at 3 (citing *Johnson*, 2003 WL 21664882, at \*2).)  On balance, this Court finds that this factor weighs in favor of granting a stay.

Accordingly, taking all of the relevant factors into account, this Court finds that Maxwell has met her burden to show that a stay of this action is warranted.

C.      **The Case Should Be Stayed in Its Entirety.**

The Co-Executors, Government, and Plaintiff all agree that, should this Court grant Maxwell's request for a stay, the stay should apply to the case in its entirety.  Indeed, the Co-Executors take pains to argue that a partial stay as to only Plaintiff's claims against Maxwell

would unduly prejudice their ability to mount their own defense.  (*See* 8/27/20 Moskowitz Ltr., at 1-2.)  Where one defendant is a central figure in an action, and where that individual's testimony is of key importance, a partial stay can lead to duplicative discovery efforts.  *Trustees of Plumbers and Pipefitters Nat. Pension Fund*, 886 F. Supp. at 1141.  This Court is persuaded that, as Maxwell is a central figure in this civil case, a stay of discovery that applies only to her would prejudice the Co-Executors by requiring them to conduct discovery without having the opportunity to depose Maxwell or collect documents in her possession.  (*See* 8/27/20 Moskowitz Ltr., at 1-2.)  Further, a partial stay could lead to duplicative depositions, as, once the partial stay is lifted, Maxwell would be entitled to question any witnesses (including Plaintiff) who may have already been deposed during the pendency of the partial stay, and, once evidence is obtained from Maxwell, other parties might also wish to re-depose witnesses.  (*See id.* at 2.)

## <u>CONCLUSION</u>

For all of the foregoing reasons, Maxwell's motion for a stay of this action, in its entirety, pending the completion of the criminal prosecution against her (Dkt. 69) is granted.  If, however, the underlying circumstances change over time in a way that could affect this Court's balancing of the relevant factors, then the parties may bring the changed circumstances to this Court's attention, and it will then consider whether the stay should continue or be lifted.  Absent any further application to this Court to review the stay, the parties are directed to provide this Court

with a joint status report in no more than 90 days, and every 90 days thereafter, during the

pendency of the stay.

Dated:  New York, New York
      September 14, 2020

                                  SO ORDERED

                                  DEBRA FREEMAN
                                  United States Magistrate Judge

Copies to:

All counsel (via ECF)